2011 OK 10

Jerry R. FENT, as a voter, attorney and taxpayer of the State of Oklahoma, and on behalf of the other 358,925 voters who objected to State Question No. 752 Legislative Referendum No. 352, Petitioners,

v.

Brad HENRY, Governor of the State of Oklahoma; State of Oklahoma, ex. rel., Oklahoma Bar Association, a State entity, and State of Oklahoma, ex. rel., Oklahoma Judicial Nominating Commission, Respondents,

and

Clark Jolley, as a duly elected member of the Oklahoma State Senate and as a voter, Intervenor.

No. 109,026.

Supreme Court of Oklahoma.

Feb. 15, 2011.

As Corrected Feb. 15, 2011.

Jerry Fent, Oklahoma City, OK, Pro Se Petitioner.

Drew Edmondson, Attorney General, Kevin McClure, Assistant Attorney General, Oklahoma City, OK, for Respondents Governor Brad Henry, Governor of the State of Oklahoma, State of Oklahoma ex. rel. Judicial Nominating Commission.

Gina Lynn Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Respondent, Oklahoma Bar Association.

Richard Lee Slater, Oklahoma City, OK, for Intervenor Senator Clark Jolley.

PER CURIAM:

¶ 1 This original proceeding challenges the validity and requirements of State Question No. 752 Legislative Referendum No. 352. We previously assumed original jurisdiction in this *publici juris* matter and hold that: 1) the referendum submitted to and approved by the voters was an amendment to the Okla. Const. art. 7–B, § 3, not a repeal of that section of the Constitution; and 2) regardless of the Constitutional amendment, the Com-

mission's decisions are valid when decided by a majority of its members.

**FACTS**

¶ 2 Legislative Referendum No. 352 (S.J.R. No. 27/State Question No. 752) passed the House of Representatives on April 23, 2009, and the Senate on May 19, 2009. It was received by the Secretary of State on May 20, 2009, and referred to the Attorney General for review of the ballot title on the same date pursuant to 34 O.S. Supp.2008 § 9(c).[1]

¶ 3 On June 1, 2009, the Attorney General notified the President Pro Tempore of the Senate, the Speaker of the House of Representatives, and the Secretary of State that the ballot title did not adequately explain the effect of the proposition. On June 15, 2009, a preliminary ballot title was prepared by the Attorney General which was followed by the final ballot title on July 1, 2009. Again notice was given to the same parties. On August 10, 2010, the Governor issued an executive proclamation which ordered the question be submitted to the voters. On November 2, 2010, State Question 752 was approved by the voters by a margin of 606,805, yes to 358,925, no and became effective when the election was certified.[2]

¶ 4 All of the proposed legislative joint resolutions refer to the change as an amendment,[3] along with the ballot measure submit-

---

1. Title 34 O.S. Supp.2008 § 9(c) provides:
 When a measure is proposed as a constitutional amendment by the Legislature or when the Legislature proposes a statute conditioned upon approval by the people:
 1. After final passage of a measure, the Secretary of State shall submit the proposed ballot title to the Attorney General for review as to legal correctness. Within five (5) business days, the Attorney General shall, in writing, notify the Secretary of State, the President Pro Tempore of the Senate and the Speaker of the House of Representatives whether or not the proposed ballot title complies with applicable laws. The Attorney General shall state with specificity any and all defects found and, if necessary, within ten (10) business days of determining that the proposed ballot title is defective, prepare a preliminary ballot title which complies with the law and furnish a copy of such ballot title to the Secretary of State, the President Pro Tempore of the Senate and the Speaker of the House of Representatives. The Attorney General may consider any comments made by the President Pro Tempore

 of the Senate or the Speaker of the House of Representatives and shall file a final ballot title with the Secretary of State no sooner than ten (10) business days and no later than fifteen (15) business days after furnishing the preliminary ballot title; and
 2. After receipt of the measure and the official ballot title, as certified by the Attorney General, the Secretary of State shall within five (5) days transmit to the Secretary of the State Election Board an attested copy of the measure, including the official ballot title.

2. Pursuant to the Okla. Const. art. 5, § 3 "[a]ny measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise." The election results were certified by the election board pursuant to 26 O.S.2001 § 12–118 on November 9, 2010.

3. On February 2, 2009, Senate Joint Resolution 27 was first read on the floor and proposed:
 A Joint Resolution directing the Secretary of State to refer to the people for their approval

ted to the voters[4] which stated that "[t]his measure amends a section of the Oklahoma Constitution. It amends Section 3 of Article 7–B."[5] The 2010 amendment amended the

or rejection a **proposed amendment** to Section 3 of Article VII–B of the Oklahoma Constitution; **modifying** the composition of the Judicial Nominating Commission; making language general neutral; providing ballot title; and directing filing. (Emphasis supplied.)

This language remained unchanged all the way through the adoption process.

The same day, Senator Sykes introduced Senate Joint Resolution No. 39 which also proposed:

A Joint Resolution directing the Secretary of State to refer to the people for their approval or rejection a **proposed amendment** to Sections 3 and 4 of Article VII–B of the Oklahoma Constitution; **modifying the** composition of the Judicial Nominating Commission; providing for appointment and terms of office; requiring the advice and consent of the Senate for certain appointments; providing ballot title; and directing filing. (Emphasis supplied.)

4. The State Question as presented to the voters of Oklahoma stated:

STATE QUESTION NO. 752
LEGISLATIVE REFERENDUM NO. 352
This measure amends a section of the Oklahoma Constitution. It amends Section 3 of

Article 7–B. This Commission selects nominees to be appointed judges or justices, when a vacancy occurs. The Commission selects three, sometimes four, qualified nominees.

The amendment adds two at-large members to the Commission. At-large members can come from any Oklahoma congressional district. The Senate President Pro Tempore appoints one of the new at-large members. The Speaker of the House of Representative appoints the other. At-large members can not be lawyers. Nor can they have a lawyer in their immediate family. Nor can more than two at-large members be from the same political party.

Six non-at-large members are appointed by the Governor. They cannot be Oklahoma lawyers. The measure adds a new qualification for non-lawyer members. They can not have a lawyer from any state in their immediate family. Each congressional district must have at least one non-lawyer member.

Six lawyer members are elected by members of the Oklahoma Bar Association. Each congressional district must have at least one lawyer member.

SHALL THE PROPOSAL BE APPROVED?

## FOR THE PROPOSAL -YES ← ▮

## AGAINST THE PROPOSAL - NO ← ▮

5. Okla. Const. art. 7–B, § 3, 1967 provided:
Judicial Nominating Commission.
(a) There is established as a part of the Judicial Department a Judicial Nominating Commission of thirteen (13) members, to consist of:
(1) six (6) members to be appointed by the Governor, one (1) from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article, none of whom shall be admitted to practice law in the State of Oklahoma;
(2) six (6) members, one (1) from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article who are, however, members of the Oklahoma Bar Association and who have been elected by the other active members of their district under procedures adopted by the Board of Governors of the Oklahoma Bar Association, until changed by statute; and
(3) one (1) member at large who shall not have been admitted to the practice of law in the State of Oklahoma or any other State, but who shall be a resident of the State of Oklahoma, to be selected by not less than eight (8) members of the Nominating Commission. In the event eight (8) members of the Commission cannot

agree upon the member at large within thirty (30) days of the initial organization of the Commission or within thirty (30) days of a vacancy in the member at large position, the Governor shall make the appointment of the member at large.

The Commission shall elect one of its members to serve as Chairman for a term of one (1) year.

The six (6) lay members of the Commission who are appointed by the Governor shall be appointed within ninety (90) days from the date that this Article becomes effective. Two (2) members shall be appointed for a term of two (2) years, two (2) members for a term of four (4) years, and two (2) members for a term of six (6) years. The Oklahoma Bar Association shall hold its election and certify to the Secretary of State its members within ninety (90) days from the effective date of this Article,

qualifications of members of the Commission to require that any lay member who serves on the Judicial Nominating Commission shall not have any "immediate family" members who are lawyers. It also amended the Constitution by adding two additional members, one to be selected by the President Pro Tempore of the Senate and the other by the Speaker of the House of Representatives. Although earlier proposed versions of the amendment attempted to change the provision's language referring to the numerical components of six congressional districts, which existed when the provision was first adopted, to five congressional districts, the Legislature declined to make this change.[6]

two (2) of whom shall be elected for a term of two (2) years, two (2) for a term of four (4) years, and two (2) for a term of six (6) years. Thereafter all of the members of the Commission, whether elected or appointed, shall serve for a term of six (6) years, except that the member at large shall serve for a term of two (2) years.

(b) Vacancies arising during the term of any lay commissioner, other than the member at large, shall be filled by appointment by the Governor for the remainder of his term. Vacancies of any lawyer commissioner shall be filled by the Board of Governors of the Oklahoma Bar Association for the remainder of his term.

(c) In the event of vacancy in the member at large position, the said vacancy shall be filled in the same manner as the original selection.

(d) Of those Commissioners named by the Governor, not more than three (3) shall belong to any one political party.

(e) The concurrence of the majority of Commissioners in office at the time shall be sufficient to decide any question, unless otherwise provided herein. The Commission shall have jurisdiction to determine whether the qualifications of nominees to hold Judicial Office have been met and to determine the existence of vacancies on the Commission.

(f) No Commissioner, while a member of the Commission, shall hold any other public office by election or appointment or any official position in a political party and he shall not be eligible, while a member of the Commission and for five (5) years thereafter, for nomination as a Judicial Officer.

(g) Commissioners shall serve without compensation but the Legislature shall provide funds to reimburse them for their necessary travel and lodging expenses while performing their duties as such Commissioners.

(h) No Commissioner shall be permitted to succeed himself.

(i) As used herein, the words "Oklahoma Bar Association" shall include any successor thereof and any future form of the organized Bar of this State.

6. Okla. Const. art. 7–B, § 3, 2010 provided:

(a) There is established as a part of the Judicial Department a Judicial Nominating Commission of fifteen (15) members, to consist of:

(1) six members to be appointed by the Governor, which shall include at least one from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article, none of whom shall be admitted to practice law in the State of Oklahoma or have any immediate family member who has been admitted to the practice of law in the State of Oklahoma or any other state;

(2) six members, which shall include at least one from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article who are, however, members of the Oklahoma Bar Association and who have been elected by the other active members of their district under procedures adopted by the Board of Governors of the Oklahoma Bar Association, until changed by statute; and

(3) three members at large who shall not have been admitted to the practice of law in the State of Oklahoma or any other state or have any immediate family member who has been admitted to the practice of law in the State of Oklahoma or any other state but who shall be a resident of the State of Oklahoma, one to be selected by not less than eight members of the Nominating Commission. In the event eight members of the Commission cannot agree upon the member at large within thirty (30) days of the initial organization of the Commission or within thirty (30) days of a vacancy in the member at large position, the Governor shall make the appointment of the member at large; one to be selected by the President Pro Tempore of the Senate; and one to be selected by the Speaker of the House of Representatives. No more than two members at large shall belong to any one political party.

The Commission shall elect one of its members to serve as chair for a term of one (1) year. The six lay members of the Commission who are appointed by the Governor shall be appointed within ninety (90) days from the date that this Article becomes effective. Two members shall be appointed for a term of two (2) years, two members for a term of four (4) years, and two members for a term of six (6) years. The Oklahoma Bar Association shall hold its election and certify to the Secretary of State its members within ninety (90) days from the effective date of this Article, two of whom shall be elected for a term of two (2) years, two for a term of four (4) years, and two for a term of six (6) years. Thereafter all of the members of the Commission, whether elected or appointed, shall serve for a term of six (6) years, except that the member at large shall serve for a term of two (2) years.

After a committee meeting and floor reading of the proposed change, the final version of the referendum left the number of members to correspond with six congressional districts as they existed when the constitutional provision was first adopted in 1967.[7]

(b) Vacancies arising during the term of any lay commissioner, other than the member at large, shall be filled by appointment by the Governor for the remainder of his or her term. Vacancies of any lawyer commissioner shall be filled by the Board of Governors of the Oklahoma Bar Association for the remainder of his or her term.

(c) In the event of vacancy in the member at large position, the said vacancy shall be filled in the same manner as the original selection.

(d) Of those Commissioners named by the Governor, not more than three shall belong to any one political party.

(e) The concurrence of the majority of Commissioners in office at the time shall be sufficient to decide any question, unless otherwise provided herein. The Commission shall have jurisdiction to determine whether the qualifications of nominees to hold Judicial Office have been met and to determine the existence of vacancies on the Commission.

(f) No Commissioner, while a member of the Commission, shall hold any other public office by election or appointment or any official position in a political party and he or she shall not be eligible, while a member of the Commission and for five (5) years thereafter, for nomination as a Judicial Officer.

(g) Commissioners shall serve without compensation but the Legislature shall provide funds to reimburse them for their necessary travel and lodging expenses while performing their duties as such Commissioners.

(h) No Commissioner shall be permitted to succeed himself or herself.

(i) As used herein, the words "Oklahoma Bar Association" shall include any successor thereof and any future form of the organized Bar of this state.

7. On February 2, 2009, Senate Joint Resolution 27 was first read on the floor and proposed the following changes to art. 7–B of the Okla. Const.:

—In § 3(a) the total number of Judicial Nomination Commission (JNC) members was decreased from 13 to 12.

—In § 3(a)(1) the number of lay members appointed by the Governor was decreased from 6 to 5.

—In § 3(a)(2) the number of elected member from each congressional district who are also members of the Oklahoma Bar Association (OBA) was decreased from 6 to 5.

—In § 3(a)(3) the number of members at large who have not been admitted to practice law was increased from 1 member to 2 members. It also changed the selection of those members by the 8 members of the JNC to selection of one of the members by the President Pro Tempore of the Senate (PPTS) and selection of one of the members by the Speaker of the House of Reps. (SPHR). It also decreased the number of lay members appointed by the Governor from 6 to 5.

—Gender neutral terms were added and remained throughout every version of this bill. Actual numbers were also removed, i.e. "Two (2)" was changed to "Two" and remained absent throughout every version.

It should be noted that also on February 2, 2009, Senator Sykes introduced Senate Joint Resolution No. 39 which also proposed to change the number of lay members from each congressional district from 6 to 5 but that bill did not make it out of committee.

On February 3, 2009, the bill was referred to the Judiciary Committee of the Senate and the committee made the following changes:

—In § 3(a) the total number of Judicial Nomination Commission (JNC) members was increased from 13 to 15 (This varies from the introduced bill by increasing it to 15 whereas the previous version decreased it to 12).

—In § 3(a)(1) it restores the number of members back to 6 (this varies from the introduced bill which reduced the number to 5) and adds clarifying language that the members shall include "at least" one from each congressional district.

—In § 3(a)(2) it restores the number of members back to 6 (this varies from the introduced bill which reduced the number to 5) and adds clarifying language that the members shall include "at least" one from each congressional district.

—In § 3(a)(3) the number of members at large who have not been admitted to practice law was increased from 1 member to 3 members (this varies from the introduced bill by increasing it to 3 instead of just increasing it to 2). It restored the selection of those members by the 8 members of the JNC (this varies from the introduced bill because it eliminated selection by the JNC and split it between the PPTS and SPHR). It also restored the governor's authority to appoint a member if the JNC could not agree (the introduced bill removed this authority) and left the introduced bill's proposed amendments allowing selection of one of the members by the President Pro Tempore of the Senate and selection of one of the members by the Speaker of the House of Reps.

On March 10, 2009, the Senate voted to pass the measure by a vote of 25–20. On April 2, 2009, the measure was given to the House of Representatives Rules Committee and on April 27, 2009 the Engrossed House Amendment to the Engrossed Senate Joint Resolution No. 27 was sent back to the Senate with the following changes:

—In § 3(a)(1) and § 3(a)(3) language was added prohibiting the selection of members who have an immediate family member who has been admitted to practice law in any state.

¶ 5 On December 20, 2010, the petitioner, Jerry Fent, a citizen of the State of Oklahoma, and member of the Oklahoma Bar Association, challenged the validity of the Judicial Nominating Commission when he filed an application to assume original jurisdiction in this Court. The petitioner also requested that the actions of the Judicial Nominating Commission be stayed and that four of the Justices on this Court be disqualified/recuse in the matter. We denied the request for a stay on December 20, 2010. Those Justices declined the petitioner's request, and in oral argument, the petitioner withdrew his objection to the composition of the Court.

¶ 6 On December 27, 2010, Senator Clark Jolley petitioned to intervene asserting an interest in the matter as a member of the Senate who voted on the measure. We granted the motion to intervene.[8] The intervenor alleges that the intent of State Question 752 was to expand the commission from 13 to 15 members and to fill all 15 positions with all new appointees. Nothing in the ballot title or legislative history supports this position. The voters were certainly not informed that their yes vote would totally dissolve the Judicial Nominating Commission. The voters were informed that this State Question amended future requirements for lay members and added two new lay members.

¶ 7 After the measure was passed by the voters, the chairman of the Judicial Nominating Commission submitted two questions to the Attorney General:

1) Do the new qualifications for non-lawyer of the Judicial Nominating Commission, found in Okla. Const. art. 7–B, § 3, adopted by State Question No. 752, apply to the current Commission members who were appointed prior to the adoption of State Question No. 752?

2) What does the term "immediate family" in Okla. Const. art. 7–B, § 3, adopted by State Question No. 752, mean?

Before the questions were answered, the three members of the Commission who had "immediate family" members who were lawyers resigned, and they were replaced by the Governor. On December 8, 2010, the Attorney General recognized that new requirements for holding a constitutionally created office are not enforced against an incumbent during a term of office which began before the effective dates of the new requirements.[9] The Attorney General determined that because there was no language in either the ballot title or the amendment which indicated an intent otherwise, the amendment could not be applied retroactively, and that the current commission members appointed prior to the November 2010 amendment of the Okla. Const. art. 7–B, § 3 were not subject to the new qualifications.[10] Notwithstanding the Attorney General's opinion, all of the members who did not meet the new qualifications resigned and were replaced by new appointments who did meet the new qualifications.[11]

¶ 8 On December 20, 2010, we denied the petitioner's motion for a stay and granted until January 5, 2011, for the briefing cycle to be completed. Because the matter concerns the public interest, i.e., the case is *publici juris* in nature, which essentially

---

—They also added language in § 3(a)(3) prohibiting more than two members from belonging to any one political party.
No further substantive changes were made after April 27, 2009. Oklahoma Legislature Home Page—Bill Tracking. (Jan. 6, 2011), http://webserver1.lsb.state.ok.us/WebBillStatus/main.html.

8. In his motion to intervene, the Senator also requested that the Court issue a stay of the proceedings of the Judicial Nominating Commission. However, because he was not yet a party when the motion to intervene/motion to stay was filed, we could not consider the request for a stay. Subsequently, we granted his motion to intervene, but we note that his status as an intervenor must not be confused with standing. Consequently, his argument that because we allowed him to intervene, we have already decided that he has standing to pursue the matter is misplaced. Nevertheless, it is unnecessary to address the standing issue because the remaining issues are dispositive.

9. 2010 OK AG 15.

10. *See*, art. 7–B, § 3, 2010 of the Okla. Const., note 6, supra.

11. The Oklahoma Bar Association member has not been replaced.

means affecting the people or community at large, we assumed original jurisdiction to decide the matter.[12] The final briefing cycle was completed on January 28, 2011, and oral argument was held February 8, 2011.

## I.

¶ 9 **THE REFERENDUM SUBMITTED TO AND APPROVED BY THE VOTERS WAS AN AMENDMENT TO THE OKLA. CONST. ART. 7–B, § 3, NOT A REPEAL OF THAT SECTION OF THE CONSTITUTION.**

¶ 10 The parties allege that the voters repealed the previous constitutional provision. The petitioner argues that: 1) when the Commission was created there were six congressional districts and the Commission required membership from each district "existing at the date of the adoption of this Article;" 2) the number of congressional districts has changed since the Commission was first created and now there are only five congressional districts but the new version of art. 7–B, § 3 repealed the prior version and does not properly reflect the change in congressional districts; and 3) because the

change from six to five was not made a conflict has been created.

 ¶ 11 After Oklahoma's Court reorganization in the late 1960's, the way in which Justices and Judges were selected in Oklahoma was changed by the voters and embraced by Legislative Referendums which amended the Oklahoma Constitution. Article 7–B, § 1–7 was created in 1967 and with its adoption, § 7–B specifically included a clause referring to the repeal of previously existing articles which would apparently conflict with this new provision.[13] This type of repeal language is consistent with our long standing rules of law that: 1) repeals by implication are never favored;[14] 2) it is not presumed that the legislature, in the enactment of a subsequent statute intended to repeal an earlier one, unless it has done so in express terms;[15] and 3) all provisions must be given effect unless irreconcilable conflicts exist.[16]

 ¶ 12 On November 2, 2010, State Question 752 was approved by the voters by a margin of 606,805, yes to 358,925, no.[17] Even though another ballot title submitted the same day expressly proposed repeal of other Constitutional provisions,[18] this amend-

**12.** *Edmondson v. Pearce,* 2004 OK 23, ¶ 11, 91 P.3d 605; *Keating v. Johnson,* 1996 OK 61, ¶ 6, 918 P.2d 51; *Ethics Commission v. Keating,* 1998 OK 36, ¶ 3, 958 P.2d 1250.

**13.** Art. 7–B, § 1–7, of the Oklahoma Constitution enacted in 1967 provides:
This proposed amendment to the Constitution of the State of Oklahoma as set forth herein shall be effective upon adoption and shall become operative only and in the event the amendment of Article VII of the Constitution proposed by House Joint Resolution No. 508, of the First Session of the Thirty-first Oklahoma Legislature, **repealing the previously existing Article VII of the Oklahoma Constitution** and adopting in lieu thereof a new Article VII of the Constitution is approved by the people. (Emphasis supplied.)

**14.** *Davis v. CMS Continental Natural Gas, Inc.,* 2001 OK 33, ¶ 8, 23 P.3d 288; *Woods Petroleum Corp. v. Delhi Gas,* 1984 OK 94, ¶¶ 11–12, 700 P.2d 1011; *Erwin v. Wheeler,* 1911 OK 324, ¶ 7, 120 P. 1098.

**15.** *Mustain v. Grand River Dam Authority,* 2003 OK 43, ¶ 23, 68 P.3d 991.

**16.** *American Ins. Assoc. v. State Indust. Com'n,* 1987 OK 107, ¶ 7, 745 P.2d 737 [Recognizing

that repeal by implication is only invoked when a later statute covers the whole subject matter of an earlier statute and contains new provisions which show that is was intended as a substitute and that the later is repugnant to and inconsistent to a prior statute.]. *City of Sand Springs v. Department of Public Welfare,* 1980 OK 36, ¶ 28, 608 P.2d 1139 [Nothing short of irreconcilable conflict between statutes accomplishes a repeal by implication.]. *Standard Co. Dairy v. Allen,* 1940 OK 408, ¶ 0, 108 P.2d 164 [Title included "[r]epealing all Laws and parts of law in conflict with this Act."].

**17.** Pursuant to the Okla. Const. art. 5 § 3 "[a]ny measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise." The election results were certified on November 9, 2010, and sent to the Governor by the State Election Board pursuant to 26 O.S.2001 § 12–118 on November 12, 2010.

**18.** Another Ballot Title, State Question 744, which the voters saw in the same election provided in pertinent part:
The measure **repeals** a section of the State Constitution. The **repealed section** required

ment to the Constitution did not include any language indicating an intent, express or implied, to repeal § 3 (the Judicial Nominating provision).[19] Without such language, an amendment to the Constitution merely supersedes law existing prior to its enactment and modifies the Constitutional provision.[20] In *Board of Com'rs of Tulsa County v. Oklahoma Tax Comm'n*, 1949 OK 258, ¶ 0, 212 P.2d 462 the Court explained:

> Where an act is not complete in itself, and is clearly amendatory of a former statute, it falls within the constitutional requirement that the statute be re-enacted as amended, whether or not it purports on its face to be mandatory thereof.

▆▆▆ ¶ 13 Art. 5, § 57 of the Oklahoma Constitution provides that amendments published at length are re-enactments of existing laws as amended.[21] When a revised and consolidated act re-enacts in the same or substantially the same terms or provisions, the revised and consolidated provision shall be taken to be the continuation of the former

acts and, unless expressly repealed, all rights and liabilities under the former act or acts are preserved and enforced.[22] Unless specifically stated in the text or in the statement placed on the ballot, constitutional amendments are generally given prospective effect only.[23] Here, the proposed joint resolution, the adopted referendum and the ballot title specifically stated that the proposition was an amendment.[24]

¶ 14 Obviously, the Legislature intended to use the 1967 congressional districts which existed when the Judicial Nominating Commission was first established. Had they not, they easily could have expressly repealed the prior version and amended that portion of the referendum; but they did not do so. This is obvious when one looks at the earliest versions of the referendum which were submitted to the Legislature.[25] Initially, the measure called for a change from 6 to 5 members to coincide with the existing structure of the congressional districts.[26] This change, however, did not appear in the final

---

> the Legislature annually to spend $42.00 for each common school student. Common schools offer pre-kindergarten through twelfth grade. (Emphasis supplied.)

**19.** Okla. Const. art. 7–B, § 3, 2010, see note 6, supra; See discussion note 4, supra.

**20.** *In the Matter of A.E. v. State of Oklahoma,* 1987 OK 76, ¶ 12, 743 P.2d 1041. Revising a constitutional amendment replaces all former laws on the subject with which it deals. In *Hendrick v. Walters*, 1993 OK 162, ¶ 13, 865 P.2d 1232, we explained:

> A time-honored rule teaches that a revising statute (or, as in this case, a constitutional amendment) takes the place of all the former laws existing upon the subject with which it deals. This is true even though it contains no express words to that effect. In the strictest sense this process is not repeal by implication. Rather, it rests upon the principle that when it is apparent from the framework of the revision that whatever is embraced in the new law shall control and whatever is excluded is discarded, decisive evidence exists of an intention to prescribe the latest provisions as the only ones on that subject which shall be obligatory. (Citations omitted.)

**21.** The Oklahoma Const. art 5 § 57 provides:

> Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall

> be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof.

**22.** *Oliver v. City of Tulsa,* 1982 OK 121, ¶ 11, 654 P.2d 607.

**23.** *Dairyland Greyhound Park, Inc. v. Doyle,* 2006 WI 107, 295 Wis.2d 1, 719 N.W.2d 408, 420 (Wis.2006); *State v. Lavazzoli,* 434 So.2d 321, 323 (Fla.1983).

**24.** See discussion notes 3 and 4, supra.

**25.** See discussion note 3, supra.

**26.** Senate Joint Resolution 27, introduced and first read February 2, 2009, provides in pertinent part:

> ... Section 3.(a) There is established as part of the Judicial Department a Judicial Nominating Commission ~~thirteen (13)~~ *twelve* members, to consist of:
> (1) ~~six (6)~~ *Five* members to be appointed by the Governor, one (1) from each congressional district ...
> (2) ~~six (6)~~ *Five* members, one (1) from each congressional district ...

version of the referendum which was passed.[27] We must assume that the Legislature's actions in rejecting the change from 6 to 5 were intentional.

¶ 15 Nor are we persuaded by the petitioner's argument that the Constitutional Amendment approved by the voter's was indirectly, implicitly amended pursuant to the general state statute 74 O.S.2001 §§ 2.3–2.4 [28] which defines congressional districts for state boards and commissions. Section 2.3 is clearly a house-keeping statute intended to apply when a change is made to a board, but consideration of the number of congressional districts was overlooked.

■■■ ¶ 16 Section 2.3 provides that "[e]xcept where otherwise specified by law." [29] Here, Okla. Const. art. 7–B, since its initial adoption and as amended by the voters in 2010 has always specified which congressional districts would be used—those existing in 1967.[30] Accordingly, this argument that a general statute usurps the specific Constitutional Amendment is without merit. Furthermore, this incorporation of the existing 1967 congressional district makes this Constitutional provision self-executing.[31]

**II.**

¶ 17 **REGARDLESS OF THE CONSTITUTIONAL AMENDMENT, THE COMMISSION'S DECISIONS ARE VALID WHEN DECIDED BY A MAJORITY OF ITS MEMBERS.**

■■■ ¶ 18 The Attorney General determined that because there was no language in either the ballot title or the amendment which indicated an intent otherwise, the amendment could not be applied retroactively, and that the current commission members appointed prior to the November 2010 amendment of the Okla. Const. art. 7–B, § 3 were not subject to the new qualifications. We agree with the Attorney General's opinion. Notwithstanding the Attorney General's opinion, all of the members who did not meet the new qualifications resigned and were replaced by new appointments who did meet the new qualifications by the end of 2010.

27. Okla. Const. art. 7–B, § 3, 2010 see note 6, supra.

28. Title 74 O.S.2001 § 2.3 provides:

A. Except where otherwise specified by law, the term 'congressional district,' when used with respect to the appointment of a member of a state board, commission, authority, or other statutory entity, shall mean the district as most recently configured by law.
B. For entities which subsection A of this section renders out of compliance with specific statutory requirements, subsequent appointments shall be so made as to cause compliance to be effected at the earliest possible date.
Title 74 O.S.2001 § 2.4 provides:
If a change in the number of congressional districts creates a conflict between a requirement that a board, commission, authority, or other statutory entity shall have a specified number of members and a requirement that one or more members shall be appointed from each congressional district, the appointing authority shall make appointments as follows:
1. If the conflict has been created by a decrease in the number of districts, the appointing authority shall make additional appointments as necessary to maintain a full board and may make said additional appointments without regard to the appointee's district of residence; and
2. If the conflict has been created by an increase in the number of districts, the appointing authority shall make only such appointments as are necessary to maintain a full board, doing so in such fashion that the members are distributed among the districts to the greatest possible extent.

29. Title 74 O.S.2001 § 2.3, see note 28, supra.

30. Okla. Const. art. 7–B, § 3, 1967 see note 5, supra; Okla. Const. art. 7–B, § 3, 2010 see note 6, supra.

31. In *Latting v. Cordell*, 1946 OK 217, ¶ 6, 172 P.2d 397 the Court explained that:

A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated to render it operative, and when there is a manifest intention that it should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. 16 C.J.S. pg. 98, sec. 48. Does it indicate that it was intended as a present enactment, complete in itself, or does it contemplate subsequent legislation to carry it into effect? 11 Am.Jur. pg. 690, sec. 73; *Ex parte Wagner*, 21 Okla. 33, 1 Okla.Crim. 148, 95 P. 435 (1908). At the time the measure was adopted in 1967, six congressional districts existed. The measure did not, by its express terms, contemplate subsequent legislation to carry it into effect. In fact, quite the opposite occurred and nothing more was required to render it operative.

Consequently, the Commission met all of the new constitutional amendment requirements except for the appointment of the two additional members by the President Pro Tempore and the Speaker who were not sworn into office until February 9, 2011.

¶ 19 The amendments to art. 7–B, § 3 [32] imposed 30–day and 90–day restrictions on membership appointments selected by the Commission itself and the Oklahoma Bar Association, respectively. However, no such restrictions were placed on the Legislature. Generally, when a law establishing a newly created office takes effect, a vacancy in the office exists at once.[33] However, as the Supreme Court of Nebraska noted in *Garrotto v. McManus*, 185 Neb. 644, 177 N.W.2d 570, 574 (Neb.1970):

> ... The elementary rule applicable to such appointment is: 'A newly created office which is not filled by the legislative act creating it, and for which no provision is made by the act for filling it, becomes vacant on the instant of its creation, and remains so until it is filled by an incumbent.... The general rule is: 'Where the office is newly created, the term begins when the office is first filled." (citations omitted).[34]

¶ 20 The Okla. Const. art. 5, §§ 28–29 provides that at the beginning of regular session and at such other times as may be necessary, the Senate and the House elect a President Pro Tempore and a Speaker.[35] They hold office for the two year legislative session until the 15th day succeeding the General Election. Because the election was held on November 2, 2010, and the provision became effective when it was certified on November 9, 2010,[36] each of these officers had until November 16, 2010, to name commissioners to the Judicial Nominating Commission. At oral argument, the intervenor's lawyer admitted that these legislative leaders could have made appointments but did not do so.

¶ 21 Pursuant to art. 5, § 26 of the Okla. Const., the Legislature selects its leaders on January 4, 2011.[37] Regardless, the vacancy in office did not preclude the Commission from conducting its business and selecting three persons to be sent to the Governor for appointment to the Supreme Court. State Question 752 reaffirmed Okla. Const. art. 7–B, § 3(e) which provides that:

> The concurrence of the majority of the Commissioners in office at the time shall be sufficient to decide any question unless otherwise provided herein. The Commission shall have jurisdiction to determine whether the qualifications of the nominee to hold Judicial office have been met and

---

**32.** The Okla. Const. art. 7–B, § 3, 2010 see note 6, supra.

**33.** *State v. Breckinridge,* 1912 OK 283, ¶ 0, 126 P. 806; *Schaffner v. Shaw,* 191 Iowa 1047, 180 N.W. 853, 854 (1920).

**34.** *Garrotto v. McManus,* 185 Neb. 644, 177 N.W.2d 570, 574 (Neb.1970); *Spears v. Davis,* 398 S.W.2d 921, 926 (Tex.1966); *State ex rel. Sanchez v. Dixon,* 4 So.2d 591, 595 (La.Ct.App. 1941).

**35.** The Okla. Const. art. 5, § 28 provides:
> The Senate shall, at the beginning of each regular session and at such other times as may be necessary, elect one of its members President pro tempore, who shall preside over its deliberations in the absence or place of the Lieutenant Governor; and the Senate shall provide for all its standing committees and, by a majority vote, elect the members thereof.
> The Okla. Const. art 5, § 29 provides:
> The House of Representatives shall, at the beginning of each regular session and at such

other times as may be necessary, elect one of its members Speaker.

**36.** See discussion note 2, supra.

**37.** The Okla. Const. art. 5 § 26 provides:
> The Legislature shall meet in regular session at the seat of government at twelve o'clock noon on the first Monday in February of each year and the regular session shall be finally adjourned sine die not later than five o'clock p.m. on the last Friday in May of each year.
> The Legislature shall also meet in regular session at the seat of government on the First Tuesday after the First Monday in January of each odd numbered year, beginning at twelve o'clock noon for the purposes only of performing the duties as required by Section 5 of Article VI of the Constitution and organizing pursuant to the provisions of this Article and shall recess not later than five o'clock p.m. of that same day until the following first Monday in February of the same year, beginning at twelve o'clock noon.

to determine the existence of vacancies on the commission.

No one has asserted that the acts of the Commission either before or after the recent amendment were not done by the majority of its members. The Commission's acts are valid and art. 7–B, § 3(e) grants the Commission the authority to act.

## CONCLUSION

¶ 22 We previously assumed original jurisdiction in this *publici juris* matter and hold that: 1) the referendum submitted to and approved by the voters was an amendment to the Okla. Const. art. 7–B, § 3, not a repeal of that section of the Constitution; and 2) regardless of the Constitutional amendment, the Commission's decisions are valid when decided by a majority of its members.

¶ 23 Should the parties choose to file a petition for rehearing, it must be done within five days of the day this opinion is filed. Two additional days will be allowed for a response. This time limitation will not be extended. Otherwise, the time allowed for filing rehearing will be held to have expired five days after this opinion is filed and it shall become final.[38]

38. The Oklahoma Supreme Court Rules, Title 12 O.S. 2001 Ch. 15 App. 1, Rule 1.13 provides in pertinent part:

(a) Petition.
Applications for a rehearing and a brief in support thereof, **unless otherwise ordered by the Court**, shall be made by petition to the Court, signed by counsel, and filed with the Clerk within twenty (20) days from the date on which the opinion in the cause is filed. The mailbox rule, extended to various papers by the terms of Rule 1.4(c) and 1.4(e), applies to rehearing petitions to the Supreme Court. No oral argument on a petition for rehearing shall be allowed except upon order of the Court. No petition for rehearing shall be filed or considered without proof of service.
(b) Application for Extension of Time to File Petition.
Applications for extension of time to file petitions for rehearing are not favored and are not routinely granted. If an application for an extension of time is filed, it must be filed within twenty days of the date the opinion is filed. No extension of time will be granted for more than twenty days from the original due date for the petition for rehearing. The appli-

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED. REQUEST FOR RELIEF BY PETITIONER AND INTERVENOR DENIED.

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, JJ., concur.

COMBS, J., recused.

cation will be granted only if the Court determines that extraordinary cause is shown in the application. No second extension of time will be granted. Press of business, that the application is not for delay, or that the issues are complex, are insufficient to show extraordinary cause. An oral application for an extension of time to file the petition for rehearing will not be considered.
(c) Copies and Size.
An original and ten (10) clearly legible copies of petitions for rehearing shall be filed. A petition and brief for rehearing shall not exceed fifteen pages.
(d) Response.
A response to a petition for rehearing need not be filed unless requested by an order of the court.
(e) Second Petition for Rehearing.
No motion or application for rehearing or review will be accepted for filing after the denial of a petition for rehearing.
(f) Rehearing When Original Jurisdiction Assumed.
A petition for rehearing may be filed in any cause where the court has assumed original jurisdiction by order or opinion and denied or granted relief. . . .(Emphasis supplied.)