2014 OK CIV APP 62

**ADVANCEPIERRE FOODS, INC., and Advance Food Company, LLC, successor by conversion to Advance Food Company, Inc., Plaintiffs/Appellants,**

v.

**GARFIELD COUNTY BOARD OF TAXROLL CORRECTIONS, Defendant/Appellee.**

No. 112392.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 8, 2014.

Robert L. Garbrecht, Michael K. Avery, McAfee & Taft, A Professional Corporation, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Michael Fields, District Attorney, District 4, John L. Scott, Assistant District Attorney, Enid, Oklahoma, for Defendant/Appellee.

KEITH RAPP, Judge.

¶1 The trial court plaintiffs, AdvancePierre Foods, Inc. and Advance Food Company, LLC, successor by conversion to Advance Food Company, Inc. (Advance), appeals an Order Sustaining Motion to Dismiss entered in favor of the defendant, Garfield County Board of Tax Roll Corrections (Board). This appeal proceeds under the provisions of Okla. Sup.Ct. Rule 1.36, 12 O.S. Supp.2013, Ch. 15, app. 2.

### BACKGROUND

¶2 The pertinent facts are not in dispute. The trial court outlined the facts at the close of the hearing.[1]

¶3 Advance claims the *ad valorem* tax exemptions provided under the provisions of

---

1. Tr. pp. 20–22. Record, Tab 6.

Article 10, Sections 6A and 6B of the Oklahoma Constitution. Section 6A is termed the Freeport Exemption and Section 6B is the Manufacturing Exemption.[2]

2. This Court notes that the Oklahoma Constitution contains two sections numbered 6A. One is regarding tangible property moving through the State (the subject of this Opinion) and the other deals with intangible personal property. All references made in this Opinion are to Section 6A, titled Tangible personal property moving through State.

Section 6A, adopted November 7, 2006, provides:

§ 6A. Tangible personal property moving through State—Situs.

A. All property consigned to a consignee in this State from outside this State to be forwarded to a point outside this State, which is entitled under the tariffs, rules, and regulations approved by the Interstate Commerce Commission to be forwarded at through rates from the point of origin to the point of destination, if not detained within this State for a period of more than ninety (90) days, shall be deemed to be property moving in interstate commerce, and no such property shall be subject to taxation in this State; provided, that goods, wares and merchandise, whether or not moving on through rates, shall be deemed to move in interstate commerce, and not subject to taxation in this State if not detained more than nine (9) months where such goods, wares and merchandise are so held for assembly, storage, manufacturing, processing or fabricating purposes; provided, further, that personal property consigned for sale within this State must be assessed as any other personal property.

B. *The Legislature shall enact laws governing the procedures for making application to the county assessor for purposes of the exemption authorized by this section, including the time as of which the application must be filed and information to be included with the application.* (*Emphasis added.*)

Prior to 2006, Section 6A provided:

§ 6A. Tangible personal property moving through State—Situs.

All property consigned to a consignee in this State from outside this State to be forwarded to a point outside this State, which is entitled under the tariffs, rules, and regulations approved by the Interstate Commerce Commission to be forwarded at through rates from the point of origin to the point of destination, if not detained within this State for a period of more than ninety (90) days, shall be deemed to be property moving in interstate commerce, and no such property shall be subject to taxation in this State; provided, that goods, wares and merchandise, whether or not moving on through rates, shall be deemed to move in interstate commerce, and not subject to taxation in this State if not detained more than nine (9) months where such goods, wares and merchandise are so held for assembly, storage, manufacturing, processing or fabricating purposes; provided, further, that personal property consigned for sale within this State must be assessed as any other personal property.

Section 6B, adopted in 2002, provides:

§ 6B. Qualifying manufacturing concern—Ad valorem tax exemption

A. For the purpose of inducing any manufacturing concern to locate or expand manufacturing facilities within any county of this state, a qualifying manufacturing concern shall be exempt from the levy of any ad valorem taxes upon new, expanded or acquired manufacturing facilities for a period of five (5) years.

B. For purposes of this section, a "qualifying manufacturing concern" means a concern that:

1. Is not engaged in business in this state or does not have property subject to ad valorem tax in this state and constructs a manufacturing facility in this state or acquires an existing facility that has been unoccupied for a period of twelve (12) months prior to acquisition; or

2. Is engaged in business in this state or has property subject to ad valorem tax in this state and constructs a manufacturing facility in this state at a different location from present facilities and continues to operate all of its facilities or acquires an existing facility that has been unoccupied for a period of twelve (12) months prior to acquisition and continues to operate all of its facilities.

C. The exemption allowed by this section shall apply to expansions of existing facilities. Provided, however that any exemption shall be limited to the increase in ad valorem taxes directly attributable to the expansion.

D. The Legislature shall define the term "manufacturing facility" for purposes of the ad valorem tax exemption provided by this section in order to promote full employment of labor resources within the state; provided, however, that a manufacturing facility that qualifies for the ad valorem tax exemption provided by this section, pursuant to the definition of "manufacturing facility" then applicable, shall be eligible for the exemption without regard to subsequent changes in the definition of the term "manufacturing facility."

E. *The Legislature shall enact laws to carry out the provisions of this section* and to provide for the reimbursement to common schools, county governments, cities and towns, emergency medical services districts, vocational-technical schools, junior colleges, county health departments and libraries for revenues lost to such entities as a result of the exemption provided by this section. (*Emphasis added.*)

F. The assessed valuation of property exempt from taxation by virtue of this section shall be added to the assessed valuation of taxable property in computing the limit on indebtedness of political subdivisions contained in Section 26 of this article.

¶ 4 In 2012, Advance admittedly missed the statutory deadline to file for an exemption from *ad valorem* taxes on property Advance owns in Garfield County. Advance then paid the taxes after the Garfield County Assessor refused Advance's request for the exemptions. In 2013, Advance sought an order from the Board correcting the tax rolls for 2012 and issuing a refund. The Board denied the request. Advance appealed to District Court.

¶ 5 In District Court, Board filed a motion to dismiss. The Board maintained that it had no jurisdiction because Advance was at fault, having missed the filing deadline.[3] The trial court agreed and dismissed the appeal. Advance appeals.

## STANDARD OF REVIEW

■ ¶ 6 Where the facts are not disputed an appeal presents only a question of law. *Baptist Building Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling.

*Heffron v. District Court of Oklahoma County*, 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076.

## ANALYSIS AND REVIEW

■ ¶ 7 The Legislature established the Board of Tax Roll Corrections "to hear and determine allegations of error, mistake or difference" as to any item or items on the tax rolls after delivery of the tax rolls to the county treasurer. 68 O.S. Supp.2013, § 2871.[4] Included in the list of matters subject to consideration by the Board of Tax Roll Corrections is when the tax rolls include exempt property that was assessed. 68 O.S. Supp.2013, § 2871(C)(2).

¶ 8 However, the Board of Tax Roll Corrections hears such cases "on application of any person or persons whose interest may in any manner be affected thereby, or by his or her agent or attorney, verified by affidavit and showing that the complainant was not at fault through failure to fulfill any duty enjoined upon him or her by law." 68 O.S. Supp.2013, 2871(B). Thus, because Advance conceded that it missed the deadline for filing for the two exemptions, the Board argued that it had no jurisdiction to hear the application and that the appeal to District Court should be dismissed.

¶ 9 Advance maintained that the two provisions for exemptions in the Oklahoma Consti-

G. Pursuant to an affirmative vote of a majority of the eligible voters of the county at an election for such purpose which may be called by the county commissioners of each county, after the expiration of the period prescribed by this section for the exemption, a county may retain not to exceed twenty-five percent (25%) of the increased ad valorem taxes derived from the levy imposed by the county upon the taxable value of property previously exempt pursuant to this section. The revenue retained by the county pursuant to this subsection may be used by the county as an economic development incentive to attract additional investment which will result in additional employment in the county. Only ad valorem tax revenue derived from ten (10) mills of the total ad valorem tax levy imposed by the county may be used for this purpose. The ad valorem tax revenue derived from the levy imposed by any other taxing jurisdiction shall be apportioned as otherwise required by law. The provisions of this subsection shall be applicable to qualified manufacturing concerns exempt prior to the adoption of the amendment contained in

this subsection and which become taxable, either by expiration of the exemption period or for other reasons, on or after the date as of which the provisions of this subsection become law and to qualified manufacturing concerns which are exempt for the first time on or after the date of the adoption of the amendment contained in this subsection and which subsequently become taxable.

3. To claim the Section 6A Freeport Exemption, the claimant had to file an application on or before March 15 during the year in which the tax is due. 68 O.S.2011, § 2902.2. To claim the Section 6B Manufacturing Exemption, the claimant also had to file an application on or before March 15 during the year in which the tax is due. 68 O.S.2011, § 2902(E). There is no contention that the property falls under the new or expanded category of property under Section 2902(C) and the attendant provisions of 68 O.S.2011, § 2902.1.

4. Amendments after 2008 did not affect the subject of this appeal.

tution are self-executing. As self-executing provisions, the imposition of conditions would be invalid. Advance relies primarily upon *Independent School Dist. No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233.

¶ 10 In *Glass*, the taxpayer claimed that a part of its inventory for 1977 was exempt from taxation under the Section 6A "Freeport Exemption." The taxpayer had not claimed the exemption, nor requested the Tulsa County Board of Equalization to review or cancel it prior to filing the complaint. The assessed property was of a category that qualified for the exemption. The Court ruled that the constitutional provision, Section 6A, was self-executing. Consequently, the Legislature could not impair, limit or destroy the exemption or impose any new or additional conditions as a prerequisite to the exemption granted by the Constitution.[5]

¶ 11 The Board does not dispute that Section 6A was self-executing prior to the 2006 amendment. However, Section 6A was amended in 2006 to add the provision for the Legislature to enact laws governing the procedures for making application to the county assessor for purposes of the exemption authorized by this section. The Manufacturing Exemption makes the same type of provision in Section 6B(E).

¶ 12 Thus, Section 6A is no longer self-executing.[6] Section 6B is not self-executing. A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated to render it operative, and when there is a manifest intention that it should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. Does it indicate that it was intended as a present enactment, complete in itself, or does it contemplate subsequent legislation to carry it into effect?

*Fent v. Henry*, 2011 OK 10, n. 31, 257 P.3d 984, n. 31 (quoting *Latting v. Cordell*, 1946 OK 217, ¶ 6, 197 Okla. 369, 172 P.2d 397, 399) (citations omitted.).

¶ 13 The Legislature has required that the application for the exemptions be made before March 15 of the taxable year. The County Assessor does not have authority to grant exemptions filed after that date (except under circumstances not applicable here). 2013 OK AG 24.

¶ 14 Advance acknowledged that it missed the deadline, apparently during the course of a change of ownership. Advance does not assert that the County Assessor or any other official was at fault.

¶ 15 Therefore, the Board of Tax Roll Corrections had no authority to hear an application from Advance. There was no error to correct and Advance was at fault through failure to fulfill its duty to timely file for the exemptions. 68 O.S. Supp.2013, § 2871(B). The trial court did not err in dismissing this

---

**5.** *Thales Navigation, Inc. v. Tulsa County ex rel. Tulsa County Assessor*, 2006 OK CIV APP 154, 149 P.3d 1103 holds likewise in a case involving the 2004 tax year. Advance also cites an Opinion of the Attorney General of Oklahoma concluding:

> A County Board of Tax-roll Corrections may lawfully recognize an exemption for a prior tax year in favor of a taxpayer, who is in fact entitled to such exemption by virtue of a self-executing constitutional exemption.
> 1981 OK AG 151.

**6.** The Oklahoma Attorney General reached the same conclusion. 2013 OK AG 24 (Section 6A is no longer self-executing and County Assessor does not have authority to grant exemption under Section 6A when the application is made after March 15 of the taxable year.) Clearly the earlier Opinion, relied upon by Advance, is not applicable to the current provisions of Section 6A. *See* n. 5.

Article 10, Section 6A was amended in 2006 to include sub-section B which directed the Legislature to: "enact laws governing the procedures for making application to the county assessor for purposes of the exemption authorized by this section, including the time as of which the application must be filed and information to be included with the application." Okla. Const. art. X, § 6A(B) (amended 2006). The inclusion of sub-section B mandates that Section 6A is no longer self-executing. As such, the holdings of *Independent School Dist. No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233 and *Thales Navigation, Inc. v. Tulsa County ex rel. Tulsa County Assessor*, 2006 OK CIV APP 154, 149 P.3d 1103 declaring that Article 10, Section 6A is self-executing have been abrogated by the 2006 amendment to Article 10, Section 6A(B).

appeal. The statutes provide an exclusive remedy for Advance. 68 O.S.2011, § 2885.[7]

## CONCLUSION

¶ 16 The provisions for *ad valorem* tax exemptions provided in Article 10, Sections 6A and 6B are not self-executing. The Legislature made provision for an application for exemption deadline of March 15 of the taxable year. The County Assessor does not have authority to grant exemptions after that date, except under certain circumstances not applicable here.

¶ 17 Advance failed to file its application for exemptions under Section 6A and Section 6B by March 15 of the taxable year involved in this case. Advance was at fault and no fault has been shown to exist on the part of the County Assessor or any other official.

¶ 18 Advance could not, therefore, seek relief before the Board of Tax Roll Corrections. There was no error to correct and Advance's problem was due to its own fault. Thus, the Board lacked jurisdiction to hear the action and the District Court correctly dismissed the appeal to the District Court.

¶ 19 **AFFIRMED.**

THORNBRUGH, J., concurs, and FISCHER, P.J., concurs in result.

---

7. Section 2885 reads:

   A. The proceedings before the county assessor, boards of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made.

   B. Appeals taken from all boards of equalization shall have precedence in the court to which they are taken.