EDMONDSON, J.
*94 ¶1 Protestants requested statutory rebates from assessments paid to the Tax Commission. Tax Commission denied the requests arguing the statutory authority for the rebate, 68 O.S.2011 § 6101, had been repealed by implication when 85A O.S.Supp. 2014 § 31 was amended in 2015. We conclude the 2015 amendment to 85A O.S. § 31 did not repeal 68 O.S.2011 § 6101 by implication. We also conclude no substantive due process violation is shown on the appellate records. We deny protestants' requests for payment of interest on their rebates.
¶2 The CompSource Mutual Insurance Company filed with the Oklahoma Tax Commission a request for a Multiple Injury Trust Fund rebate. The request was filed on May 25, 2016, and sought a rebate in the amount of $10,777,247.00 based upon the Multiple Injury Trust Fund assessment CompSource paid in 2015.
¶3 In March 2016, the Oklahoma Association of Electric Self Insurers Fund filed with the Oklahoma Tax Commission a request for a Multiple Injury Trust Fund rebate based upon the Multiple Injury Trust Fund assessment it paid in 2015. This rebate request was for the amount of $136,754.82.
¶4 An administrative law judge for the Oklahoma Tax Commission granted an unopposed motion to consolidate the protests of CompSource and the Oklahoma Association of Electric Self Insurers Fund, and they were adjudicated together, but adjudicated separately when reviewed by the Commissioners who issued separate orders for each protest. The administrative law judge concluded the rebates should be paid to the protestants. The Tax Commission, with two Commissioners voting, denied both protests and directed the administrative law judge to issue findings, conclusions and recommendations consistent with the denial.
¶5 Protestants brought appeals from both orders of the Tax Commission.[1] They filed motions for the Court to retain the appeals and those motions were granted by a prior order of the Court. We have treated the appeals as companion appeals and we adjudicate both of them with a single opinion.
*95 ¶6 The Oklahoma Association of Electric Self Insurers and CompSource Mutual Insurance Company filed separate motions for an oral argument before the Court. A motion for oral argument must set forth "the exceptional reason that oral argument is necessary."[2] The Tax Commission opposed the motions. The motions state the Court's decision will have an impact on several workers' compensation insurance carriers. Workers' compensation statutes are part of a public-law regulatory scheme,[3] and the rebates sought by Protestants, if authorized, would be paid from the general income taxes collected by the Tax Commission pursuant to 68 O.S. § 2355.[4] This controversy has attributes of both a private and public nature. Oral argument would not materially assist the Court and the motions for oral argument are denied.
Statutes Raised by the Parties
¶7 The legal issue presented by these cases is whether certain parties are entitled to a rebate of funds previously paid to the Tax Commission. The controversy involves statutory construction and the intent of the Legislature concerning the rebate. Protestants state they are entitled to a refund pursuant to 68 O.S. §§ 6101 - 6102, and the Tax Commission argues these statutes have been repealed citing an Executive Order issued by the Governor. A short history of the relevant statutes provides a context for the present controversy.
¶8 The Multiple Injury Trust Fund, previously known as the Special Indemnity Fund, was established to compensate an injured worker for his or her statutorily recognized work-related injury after having had a previous worker's compensation injury. Workers' compensation insurance carriers, CompSource, employers self-insured for workers' compensation, and other entities fulfilling the same role have been statutorily required to pay annual assessments to the Multiple Injury Trust Fund.
¶9 In 2001, 85 O.S. § 173 required annual assessments made upon each mutual or interinsurance association, stock company, CompSource Oklahoma, an insurance carrier writing workers' compensation insurance, and from employers carrying their own risk including group self-insurance associations.[5] These assessments were paid to the Oklahoma Tax Commission.[6] The Tax Commission paid to the State Treasurer monies collected pursuant to these assessments "to the credit of the Multiple Injury Trust Fund" minus specified amounts paid to the Department of Labor, Office of the Attorney General, and the Oklahoma Department of Career and Technology Education.[7] In 2001, these assessments had been part of a tax incentive program and involved an income tax credit provided by 68 O.S. § 2357.44.[8]
*96 ¶10 In 2002, the Legislature passed House Bill No. 2752 which (1) amended § 173 and specified one-third of the assessment could be charged to policy holders and two-thirds could not be so charged, (2) repealed the income tax credit for the assessment,[9] and (3) created a statutory rebate, 68 O.S. §§ 6101 - 6102,[10] based upon two-thirds of the assessment previously paid pursuant to § 173. In summary, the tax credit was replaced with a rebate based upon the assessment and the two-thirds ratio provided in 85 O.S. § 173. From 2002 to 2011, and in accordance with 85 O.S. § 173, now expressly repealed, only one-third (1/3) of the assessments could be charged by the carriers against their policyholders, and the remaining two-thirds (2/3) of assessments could not be included in any rate, premium, charge, fee, assessment or other amount collected from a policy-holder.[11]
¶11 In 2011, 85 O.S.Supp. 2005 § 173 was repealed by Laws 2011, c. 318, § 87.[12] The "Workers' Compensation Code" was created by this change in order to replace the previous "Workers' Compensation Act."[13] The new Workers' Compensation Code created 85 O.S.2011 § 403 and for our purposes its application was identical to repealed § 173.[14] Section 403 continued the assessment against the same entities, and continued to state one-third (1/3) of the assessments could be charged against the policyholders, and the remaining two-thirds (2/3) of assessments could not be included in any rate, premium, charge, fee, assessment or other amount collected from a policy-holder .
¶12 Section 403 had a minor amendment in 2012,[15] and then one year later the Legislature amended § 403 as part of the new "CompSource Mutual Insurance Company Act," and appeared to remove CompSource Oklahoma from the designated insurers required to pay the assessment formerly referenced in § 403(A)(1), (3), (5), & (D),[16] and simultaneously the 2013 version of § 403(A)(1) stated: "The Board of Directors of CompSource Mutual Insurance Company shall have the power to disapprove the rate established by the MITF Director until the Multiple Injury Trust Fund repays in full the amount due on any loan from CompSource Mutual Insurance Company or its predecessor CompSource Oklahoma." During this same legislative session, § 403 was expressly repealed effective February 1, 2014, the date the new Administrative Workers' Compensation Act was effective.[17]
¶13 The new Administrative Workers' Compensation Act created 85A O.S.Supp.2013 § 31, enacted language similar to the previous 85 O.S. § 403, and again expressly included "CompSource Oklahoma"[18] in the designated list of insurers required to pay *97 the annual assessments.[19] The new Act continued to state the assessment against the same entities, and continued to state one-third (1/3) of the assessments could be charged against the policyholders, and the remaining two-thirds (2/3) of assessments could not be included in any rate, premium, charge, fee, assessment or other amount collected from a policyholder .[20]
¶14 In 2015, the Legislature amended 85A O.S.Supp.2014 § 31. The amendment removed the language in § 31 (A)(3) which had created the one-third and two-thirds split in the assessment, removed the prohibition of collecting two-thirds of the assessment from policyholders, and also removed the allocations to the Office of the Attorney General and the Department of Labor granted by the previous version of § 31(I).[21]
¶15 Title 68 O.S. § 6101 states a party required to pay an assessment pursuant to 85 O.S. § 173 is entitled to receive a rebate equal to two-thirds (2/3) of the amount of the assessment actually paid , subject to application to and approval by the Oklahoma Tax Commission.[22] In 68 O.S. § 6102, the Legislature created a special fund within the State Treasury for the Workers' Compensation Assessment Rebate Fund."[23] Section 6102 states the Tax Commission is authorized and directed to withhold a portion of the taxes levied and collected pursuant to 68 O.S. § 2355 (income tax) for deposit into the Rebate Fund. The 68 O.S. § 6101 rebate to insurers was also referenced in 36 O.S. Supp.2002 § 1501(12) for the purpose of calculating the assets of an insurer.[24] This language in § 1501 was subsequently codified in the current version of § 1501 located in the 2011 statutes.[25] Sections 6101 and 6102 have not been expressly repealed by the Legislature.
¶16 Governor Fallin issued an Executive Order upon conclusion of the Legislature's Session in 2015, a portion of which states the following.
Today with the signing of House Bill 2238, the intent of the Legislature is *98 made clear as to the rebate provisions contained within 68 O.S. § 6101. Based on increased funding included in the budget, language in section 3 of the bill which removes billing restrictions, and discussions of legislative intent during budget negotiations with this office, recognize and concur with the Legislature that the Oklahoma Tax Commission should no longer process the rebate of the Multiple Injury Trust Fund assessments pursuant to 68 O.S. § 6101. It appears that previous legislative intent may well have been for the rebate to have been paid between 2011 and this date. However, that is no longer the case.
Executive Order 2015-28 (June 1, 2015).
The Tax Commission argues the rebate provisions in sections 6101 & 6102 were impliedly repealed by 2015 Okla. Sess. Laws Ch. 344 (H.B. 2238), and this implied repeal was recognized by the Governor in her Executive Order.
General Reference and Specific Reference Statutes
¶17 The Tax Commission argues no rebate is allowed for 2015 because: The statute authorizing a rebate, § 6101, states "All parties required to pay an assessment pursuant to Section 173 of Title 85 of the Oklahoma Statutes" are entitled to a rebate, § 173 was repealed in 2011, and assessments paid in 2015 were not an assessment required by § 173 necessary for a § 6101 rebate in 2015. The Protestants argue § 6101 has not been repealed and they are entitled to a rebate equal to two-thirds of their paid assessments.
¶18 In summary, the issues presented by the parties' arguments are: (1) Whether § 173 was incorporated into § 6101 regardless of subsequent amendments to § 173 or if that section referenced in § 6101 was one to general law concerning insurers' rebates and billing practices with the effect that subsequent legislative amendments may alter the application of § 173 (and 85 O.S.2011 § 403 and 85 O.S.Supp. 2013 § 31) to § 6101 ; and (2) Whether the amendment to section 31 may repeal section 6101 by implication.
¶19 We start with this analysis because: (1) The parties' include an argument based on the nature or type of reference to 85 O.S. 173 which is made in 68 O.S. 6101 ; (2) If the reference statute is one of specific reference rather than general, then the repeal of section 173 and the removal of the language in section 31 would have no effect on the section 6101 rebate, because (a) enacted law is neither repealed nor diminished in its force by the passage or rejection of an act that would be duplicative of a statute already "on the books,"[26] and (b) a general rule that a "repeal of a referred statute has no effect on the reference statute unless the reference statute is repealed by implication with the referred statute;"[27] and (3) A general rule is that repeal of a statute by implication is not favored.[28]
¶ 20 When a statute refers to another for the purpose of the powers given by the former, the statute referred to is considered as incorporated in the one making the reference.[29] A reference statute adopts another statute or a part thereof and makes it wholly or partially applicable to the subject *99 of the reference statute.[30] A reference statute may refer to another existing statute to prescribe the rule, manner, or procedure a particular thing is done to avoid encumbering the statute books by unnecessary repetition; and "the effect generally is not to revive or continue in force the statute referred to for the purposes for which it was originally enacted, but merely for the purpose of carrying into execution the statute in which the reference is made."[31] A statute of specific reference adopts only the particular parts of the statute to which it refers.
¶21 Generally, if a reference statute adopts or incorporates another statute or a portion thereof, then the adoption takes the statute existing at the time of the adoption and does not include subsequent amendments or modifications unless express legislative intent or a strong implication exists which indicates otherwise.[32] However, if a reference to a statute is for the purpose of referring to the general law on the subject, which may include a reference to a specific statutory practice or procedure, then the reference to the statute is construed as including amendments to the referenced statute as well as changes to other applicable law which occurred after adoption of the reference.[33]
¶22 For example, in 1990 the Supreme Court of New Jersey relied upon the same 1977 opinion from the United States Court of Appeals for the Seventh Circuit as the Tenth Circuit in 2016 for the observation that courts have had a common practice of construing a specific statutory reference in context as referencing general law when "the surface specificity of the incorporating language dissolved upon close judicial scrutiny."[34] In other words, specificity in the statutory reference is not sufficient, by itself, to make the reference an incorporation of the statute referenced so as to exclude subsequent statutory amendments as opposed to merely being a reference to general law relating to the subject of the statute referenced and thereby allowing the application of subsequently enacted law.
¶23 The interpretation of these statutes as requested by the parties presents a question of law and on appeal we exercise a nondeferential de novo standard of review for the purpose of determining and applying legislative *100 intent.[35] We must first determine if the reference to § 173 is a specific incorporation of that section or a part thereof into § 6101 or if the reference is general to law relating to insurers' rebates. We look first to the plain language of the statute, § 6101, to determine if any ambiguity exists on the issue whether a specific or general reference is made therein to § 173.[36] Rules of construction are applied to determine legislative intent when the statutory language is ambiguous or its meaning uncertain.[37]
¶24 Section 6101 states: "All parties required to pay an assessment pursuant to Section 173 of Title 85 of the Oklahoma Statutes shall be entitled to receive a rebate equal to two-thirds (2/3) of the amount of the assessment actually paid, subject to application to and approval of the same by the Oklahoma Tax Commission." The test for ambiguity in a statute is whether the language is susceptible to more than one reasonable interpretation.[38] As previously explained, the mere citation of a specific statute, 85 O.S. § 173, is insufficient by itself to create a statute of specific versus general reference. This language in section 6101 does not expressly incorporate language in 85 O.S § 173 into 68 O.S. § 6101. The plain language of 68 O.S. 6101 is susceptible to more than one reasonable interpretation on the issue of which type of statutory reference is created by citing section 173.
¶25 The language in section 6101 states two conditions must exist to receive a rebate. The first condition is whether a party paid an assessment pursuant to the procedure and requirements of § 173, and the second is the approval of the Oklahoma Tax Commission. Section 6101 refers to the entity entitled to receive a rebate in terms of that entity having previously paid an assessment. The reference to § 173 in § 6101 may be characterized as containing a procedural component to a condition for a rebate by its language indicating when rebates are authorized, and as a reference to a procedure such demonstrates a general reference as opposed to a specific reference by incorporation.
¶26 One reason for this conclusion is that if a reference statute pertains only to a method of procedure and refers generally to some statute which defines how certain things may be done, then the ordinary construction is that such reference statute will be expanded, modified, or changed every time the statute referred to is changed by the Legislature.[39] When such legislative changes or statutory amendments may be applied, then the reference is general and not a specific reference statute. The Tax Commission and the Governor have taken a legal position which assumes the reference in section 6101 is general because they rely on the 2015 amendment to section 31, as we now explain.
¶27 One question necessarily implied by the arguments of the parties on this issue[40] is whether every insurance carrier rebate from 2002 to the present, and specifically in our case for 2015, requires giving effect to § 173 as it existed in 2002 when § 173 was referenced in § 6101. This reasoning is based *101 upon the well-known principle that a statute with a specific reference incorporates the law existing at the time of incorporation and does not include subsequent amendments.[41] The Tax Commission also makes an argument that the reference in 6101 to section 173 is a specific reference to section 173 in 2002, and it argues this type of reference means that after repeal of section 173 a rebate pursuant to section 6101 can no longer occur. This view is incorrect.[42]
¶28 Generally, statutes on the same subject matter are viewed in pari materia and construed together as a harmonious whole giving effect to each provision, and we have applied this concept when construing tax statutes as well as construing workers' compensation statutes when we have looked to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent.[43] This analysis includes looking at antecedent legislative enactments for certain purposes.[44]
¶29 The 2005 version of § 173 was repealed in 2011 and the newly enacted Workers' Compensation Code created 85 O.S.2011 § 403 which was identical to repealed § 173 for our purposes today. Generally, repeal of a statute combined with its new codification by renumbering with no substantive change will result in no change in judicial construction of the statute; i.e. , repeal followed by mere renumbering and recodification is not usually construed as altering the meaning of a statute.[45]
¶30 The Oklahoma Tax Commission continued providing the rebates after the repeal of section 173 in 2011. The language in 85 O.S.2011 § 403 was identical to former section 173 for the purpose of insurance carrier assessments with two-thirds of that assessment not chargeable to policyholders, and that same two-thirds of the assessment being the amount authorized for a rebate in 68 O.S.2011 § 6101.[46] Section 403 was in effect from 2011 until 2014. The Legislature created 85A O.S. § 31 in 2013 and again included the same language concerning the insurance carrier assessments and two-thirds not chargeable to policyholders. The Tax Commission *102 processed rebates for 2014 when § 31 was effective. When the language in 85A O.S § 31 was amended in 2015 it removed the prohibition of collecting two-thirds of the assessment from policyholders, and both the Tax Commission and the Governor stated the rebate of the assessment was no longer authorized. This conduct by the Tax Commission during the four years 2011-2014 which continued the rebate when combined with the Commission's conduct in stopping the rebate in 2015, shows that the Commission construed the reference in 6101 to 173 as a general reference and not a specific reference incorporating the 2002 version of § 173 ; i.e. , after the repeal of § 173 the authority for a rebate of two-thirds of the assessment was 85 O.S. § 403 and then 85A O.S. § 31, when joined in combination with section 6101.
¶31 A court's construction of ambiguous statutory language will give great weight to the construction or meaning used by officials charged with execution of the statute.[47] The construction by the Tax Commission and the Governor agrees with our conclusion that the reference to 173 in section 6101 is to a workers' compensation carrier's compliance with the assessment procedure and is a general reference; and language in the 2002 version of section 173 was not specifically incorporated into section 6101.
Repeal By Implication
¶32 Our conclusion that section 6101 contains a general reference to the procedure for workers' compensation carrier assessments does not answer an issue briefed by the parties. Does the amendment to 85A O.S. § 31 in 2015 create an implied repeal of 68 O.S. §§ 6101 and 6102 ? The Tax Commission by its briefs and the Governor by her Executive Order indicate section 6101 was repealed by the 2015 amendment to section 31.
¶33 In 2015 when 85A O.S. § 31 was amended by House Bill No. 2238, the following language was removed from section 31 .
Only one-third (1/3) of assessments against insurance carriers and CompSource Oklahoma may be charged to policyholders and shall not be considered in determining whether any rate is excessive. The remaining two-thirds (2/3) of assessments against insurance carriers and CompSource Oklahoma may not be included in any rate, premium, charge, fee, assessment or other amount to be collected from a policyholder. Insurance carriers and CompSource Oklahoma shall not separately state the amount of the assessment on any invoice or billing assessment.
2015 Okla. Sess. Laws, Ch. 344, § 3 (H.B. No. 2238).
Section 6101 of Title 68 also referred to this one-third and two-thirds split and was not expressly repealed by H.B. No. 2238. Section 6101 states in part as follows.
A. All parties required to pay an assessment pursuant to Section 173 of Title 85 of the Oklahoma Statutes shall be entitled to receive a rebate equal to two-thirds (2/3) of the amount of the assessment actually paid, subject to application to and approval of the same by the Oklahoma Tax Commission. This rebate shall only apply to assessments due after January 15, 2002. This rebate shall not be considered in determining tax liability of an insurer pursuant to Section 629 of Title 36 of the Oklahoma Statutes.
68 O.S.2011 § 6101(A).
The amount of the rebate in section 6101 is two-thirds of the workers' compensation carrier's assessment pursuant to section 31. Prior to 2015, this rebate of "two-thirds (2/3) of the amount of the assessment" in section 6101 is equal to two-thirds of the assessment specified in former sections 85 O.S. §§ 173 and 403, and 85A O.S. § 31. Pursuant to § 31 this two-thirds amount could not be included in any rate, premium, charge, fee, assessment or other amount to be collected from a policyholder. Further, section 6101 referenced 36 O.S.2001 § 629 and prohibited this same two-thirds amount from being considered when *103 determining the premium tax required of section 629.
¶34 The general rule is that (1) repeals by implication are never favored, (2) it is not presumed that the legislature in the enactment of a subsequent statute intended to repeal an earlier one, unless it has done so in express terms, and (3) all provisions must be given effect unless irreconcilable conflicts exist.[48] Our approach to this issue is not unique.[49] We must initially construe the meaning of section 6101 with the statute it references 36 O.S. 629 and with section 31 before the 2015 amendment. One reason for this is that the language in all three sections arose from the same House Bill in 2002, and construction of a statutory provision by reference to its structure, purpose and the text of the entire enactment is a method familiar to Oklahoma courts.[50]
¶35 We must also consider the relevant statutory language, sections 31, 6101, and 629 in context after the amendment to section 31 to construe present legislative intent because one Legislature cannot bind a subsequent Legislature.[51] Of course, legislative amendments other than clarifying amendments[52] express new or amended legislative policy and intent concerning the text which is amended as such relates to other statutes which remained legislatively unaltered. When construing a legislative act, whether constitutional or statutory, our primary goal is to ascertain and follow legislative intent.[53]
¶36 Previous to 2002 the paid assessments were subject to an income tax credit for a workers' compensation insurance carrier. In 2002, section 6101 was initially created in House Bill No. 2752 with the two-thirds split in 85 O.S. § 173 (later 85A O.S. § 31 ), and these two statutes worked together and with 36 O.S. § 629 so that the premium tax would not include the two-thirds recovered in the rebate and this amount would not be collected from a policyholder in the form of a premium or other policyholder fee, charge or assessment.
¶37 The 2015 amendment to 85A O.S. § 31 removed language which had prohibited a workers' compensation insurance carrier from collecting two-thirds of the assessment from its policyholders. Protestants' view of the statutes after the 2015 amendment is essentially: (1) The insurance carrier assessment is paid by the insurer pursuant to the amended version of section 31 ; (2) The amended version of section 31 contains no restriction on billing or collecting from a policyholder the amount of the assessment;
*104 (3) Section 6101 was not expressly repealed and continued to authorize a rebate in the amount of two-thirds of the insurer's assessment; and (4) Two-thirds of the assessment is not subject to a section 629 premium tax if the assessment amount was previously collected from its policyholder as a premium. CompSource Mutual Insurance Company also argues, in reply to the Tax Commission, that the nature of its organization as a mutual company means it has no "policyholders," it cannot receive a "windfall" as a result of obtaining a section 6101 rebate, and that the Court should not attempt to determine when or if insurance rates are excessive in light of the change in billing practices as a result of the 2015 amendment.[54]
¶38 We conclude the workers' compensation insurer assessments remained the same after the 2015 amendment except for the former billing restrictions which were removed by the amendment. House Bill No. 2752, which in 2002 created the two-thirds assessment split in 85 O.S. § 173 and the two-thirds rebate in 68 O.S. § 6101, also expressly repealed the former tax credit in 68 O.S. § 2357.44.[55] The Legislature knows how to expressly repeal a statute, and our recognition of this fact is one reason for the general rule that it will not be presumed that a legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express terms.[56] The Legislature did not expressly repeal 68 O.S.2011 § 6101.
¶39 There must be conflicting language, public policy, or legislative intent in the statutes at issue in order to support the Tax Commission's conclusion that § 6101 has been repealed by implication. We conclude no conflict is present, and § 6101 was not repealed by implication.
Governor's Executive Order
¶40 The Governor's Executive Order, 2015-28, states the intent of the Legislature in removing the billing restrictions was to repeal § 6101, and this conclusion is supported by her understanding of statements made during budget negotiations. The Governor may certainly speak on her intent concerning legislation with which she is involved. But the Legislature communicates its intent as a body, and testimony of individuals involved in the legislative process of creating a statute is not competent on the intent of the Legislature as a whole.[57]
¶41 Officials' expressions of legislative intent when they participate in the law-making process may be especially well informed concerning legislative intent, and upon judicial review of their administrative construction a court may give deference to that construction. This deference springs from a previous official construction where the Legislature has acquiesced in the administrative action, and we have often noted that the administrative construction was not transitory but long-standing.[58]
*105 ¶42 It is not the Governor's expression of legislative intent in her executive order which raises the issue of deference on the issue of legislative intent, but an apparent legislative acquiescence to the executive order and Tax Commission interpretation by the passing of the 2016, 2017, and 2018 legislative sessions without any legislation in the form a clarifying amendment to § 6101. However, we find significant that the executive order and Tax Commission construction of § 6101 has occurred continuously and simultaneously with public administrative and judicial challenges to the Tax Commission's construction of § 6101. We cannot determine whether the collective will of the Legislature has acquiesced in the last three years to the ongoing administrative construction of § 6101 or to the ongoing public judicial challenges and ultimate resolution of the controversy in this Court.
¶43 Protestants object to the Governor issuing the executive order. The power exercised by the Governor, by executive order or otherwise, may be limited or granted by statute.[59] The power of the Governor to direct how executive officials will execute statutory law is limited by the nature of the constitutional power vested in the Governor.[60] We have concluded contrary to the substance of the executive order that 68 O.S. § 6101 was not repealed by the 2015 amendment 85A O.S. § 31. The exercise of legislative power via a state statute may not divest a person's already vested property interest in the absence of certain recognized exceptions such as when procedural protections are constitutionally required or when a legislature exercises certain police powers;[61] and similarly, the Governor's executive power concerning a matter beyond the scope of one of the Governor's express constitutional powers does not supersede the authority of statute which has been created by the legislature and approved by a governor.
¶44 The Governor's Executive Order refers to no constitutional or statutory power possessed by the Governor for directing the Tax Commission to stop processing the § 6101 rebates, but no such express requirement for executive orders is created in the Oklahoma Constitution. The Constitution does provide as follows.
The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he [or she] shall be a conservator of the peace throughout the State.
Okla. Const. Art. 6 § 8 (explanatory phrase added).
The Governor has the power to issue executive orders to executive officials directing them to faithfully execute the law, subject of course to other provisions of our Constitution such as the due process clause.[62] She possessed the power to issue an executive order, but the content of that order stating § 6101 had been repealed was simply an incorrect legal conclusion.
¶ 45 Protestants argue they have been denied "due process" because they have "a vested right to a tax refund" which they have not received at this time. No distinction is made in the briefs between procedural and substantive due process, or between pre-deprivation and post-deprivation remedies and *106 their adequacy for the right allegedly infringed. Several years ago we relied on an opinion from the U.S. Supreme Court and explained due process requires a "clear and certain" remedy for taxes collected in violation of federal law, and a State has the flexibility to provide that remedy before the disputed taxes are paid (pre-deprivation), after they are paid (post-deprivation), or both.[63] However, a simple assertion is made by protestants that "process is not the problem." We construe this to assert they do not challenge the process for a tax remedy.
¶46 The Oklahoma Association of Electric Self Insurers Fund states "it has complied with the statutory prerequisites set forth in 68 O.S. § 6101" and argues it has a vested right to the rebate. Its brief does not set forth all of the statutory requirements to which it refers or the locations in the appellate record showing where those requirements are satisfied. For example, section 6101 states the rebate is "subject to application to and approval of the same by the Oklahoma Tax Commission." The brief does not explain how this condition either was fulfilled or should be deemed to be fulfilled by the actions of the protestants and the actions of the Tax Commission for the purpose of showing fulfillment of required statutory conditions. We note 68 O.S. § 6102 states "The liability of the State of Oklahoma to make the rebate payments under Section 2 ( § 6101 ) of this act shall be limited to the balance contained in the fund created by this section." The parties do not brief and point to the records on appeal for the purpose of showing money was in the "Workers' Compensation Assessment Rebate Fund," when they sought their assessment rebates. Generally, a legal interest will not vest when a condition precedent for vesting has not occurred.[64] Fiscal policy is exclusively within the Legislature's power.[65] However, if a taxpayer has demonstrated compliance with taxpayer's statutory requirements to receive a right to a tax refund, due process is violated when government funds are not adequate and available to pay the refund.[66] The parties do not discuss whether for the purpose of due process the applications for a rebate filed before the date of the executive order should be distinguished from applications for a rebate filed after the executive order.
¶47 The CompSource Mutual Insurance Company states the Tax Commission's refusal to pay the rebate "violates due process as an unconstitutional taking ... that cannot be extinguished without just compensation."[67] A regulatory taking with an unjust compensation constitutional claim should be separated from a due process constitutional claim because, for example, the *107 constitutional injury of a state regulatory taking of property without just compensation does not occur when the state provides an adequate postdeprivation remedy,[68] as distinguished from substantive due process which bars certain governmental action despite the adequacy of procedural protections[69] where the regulatory action is so arbitrary and irrational as to violate due process.[70] Substantive due process does not protect from erroneous regulatory action, but arbitrary and irrational actions.[71] The Tax Commission and Governor asserted the 2015 amendment created an implied repeal by operation of law and the Governor's understanding of legislative intent. The Tax Commission relied upon a legally erroneous executive order issued by the Governor which controlled the Tax Commission's discretion. We conclude no substantive due process violation is present by the Tax Commission's erroneous legal understanding of ambiguous statutory language.
¶48 We also note the protestants were denied their requests for rebates and filed protests before the Tax Commission which eventually resulted in the present appeals before this Court, and we have directed herein the Tax Commission orders be reversed and the proceedings remanded for the Tax Commission to process their requests for rebates.
Interest
¶49 The protestants ask the Court to award interest pursuant to 68 O.S. 225(E) commencing on August 30, 2017. Section 225(E) provides interest from the date the petition in error was filed in this Court.[72] However, the next paragraph in that section states the refund and interest shall be paid by the Tax Commission out of monies in the Tax Commission clearing account from subsequent collections from the same source as the original tax assessment .[73]
¶50 The legislature has specified that the insurance carrier rebates come from income tax collections and not the monies collected from the insurance carrier assessments, and the statute authorizing the rebates does not authorize interest. Before its repeal, 85 O.S. § 173 provided for Multiple Injury Trust Fund refunds to be paid from the Multiple Injury Trust Fund, and the general refund provisions of 68 O.S. sections 227 - 229 applied.
*108 85 O.S.Supp.2005 § 173 (H). Section 403 continued this language in 2011.[74] Section 31 in the new Administrative Workers' Compensation Act includes the same language.[75] This language does not expressly include either 68 O.S. § 225 or the assessment rebates in 68 O.S. § 6101. During this time 68 O.S. § 6102 has been in effect and has expressly provided the workers' compensation assessment rebates would be paid from income tax collections .[76] Funds collected pursuant to 85A O.S.Supp.2015 § 31 are paid by the Tax Commission to the State Treasurer to the credit of the Multiple Injury Trust Fund.[77] The Multiple Injury Trust Fund is not used for assessment rebates which are paid from income tax collections as authorized by 68 O.S. § 6102.
¶51 The Court applies the specific tax statute authorizing interest which is applicable to the specific controversy.[78] Protestants rely on 68 O.S. § 225. Section 225 is part of the Uniform Tax Procedure Code codified in Article 2, Ch. 1 of Title 68, Oklahoma Statutes, ( 68 O.S.2011 § 201 through § 291, inclusive as amended). The purpose of the uniform procedure is to provide, so far as is possible, uniform procedures and remedies with respect to all state taxes, unless otherwise expressly provided in any state tax law.[79]
¶52 The language in 68 O.S. § 225 provides a general procedure concerning payments for refunds and interest from the collecting fund of the same tax type and conflicts with the language in 68 O.S. § 6102 which is more specific and states an assessment rebate is paid from the fund used for income tax collections. A specific statute controls a more general statute on the same subject.[80] If a specific tax statute conflicts with a provision of the Uniform Tax Procedure Code, then the specific statute controls the general.[81] The requests for interest on the rebates are denied.
Conclusion
¶53 We conclude the 2015 amendment to 85A O.S. § 31 did not repeal 68 O.S.2011 § 6101 by implication. The rebates authorized by the Legislature in section 6101 have not been expressly repealed by the Legislature. No substantive due process violation is shown in the appellate records for these two appeals. The protestants' requests for payment of interest on their rebates are denied.
¶54 The two orders of the Tax Commission are reversed and the proceedings are remanded to the Tax Commission for the appropriate processing of section 6101 rebates for protestants.
¶55 COMBS, C.J.; KAUGER, WINCHESTER, EDMONDSON, COLBERT, REIF, and DARBY, JJ., concur.
¶56 GURICH, V.C.J. (by separate writing); and WYRICK, J., dissent.
GURICH, V.C.J., with whom WYRICK, J., joins dissenting:
*109 ¶1 I must respectfully dissent from this Court's decision to award rebates in the above-captioned matters. The plain and unambiguous language of 68 O.S. 2011 § 6101(A) permits a rebate, but only for Multiple Injury Trust Fund assessments paid in accordance with " Section 173 of Title 85 of the Oklahoma Statutes." Section 173 was repealed by the Legislature in 2011.[1] Consequently, the taxpayers do not qualify for a rebate of the 2015 MITF assessments.
¶2 Moreover, the Legislature created the MITF assessment and rebate scheme in 2002, codifying 68 O.S. § 6101(A) and 85 O.S. § 173(A)(2) together in H.B. No. 2753. See 2002 Okla. Sess. Laws, Ch. 31, §§ 2-4, pp. 191-192. As originally enacted, the Tax Code authorized a rebate equal to two-thirds (2/3) of MITF assessments paid under 85 O.S.Supp. 2002 § 173 to the MITF. To prevent Oklahoma insurance carriers from passing on one-hundred percent (100%) of the MITF assessment to policyholders and claiming the rebate, Section 173 limited the sums which could be shouldered by policyholders:
Only one-third (1/3) of assessments against insurance carriers and CompSource Oklahoma may be charged to policyholders and shall not be considered in determining whether any rate is excessive. The remaining two-thirds (2/3) of assessments against insurance carriers and CompSource Oklahoma may not be included in any rate, premium, charge, fee, assessment or other amount to be collected from a policyholder.
85 O.S. 2002 § 173(A)(2). When reading both § 6101(A) and § 173(A)(2) in harmony, the legislative rationale behind allowing a two-thirds (2/3) rebate is obvious-to protect policyholders from bearing the entire tax burden and to make insurers paying the MITF assessment whole without bestowing a windfall.[2]
¶3 In 2015, when the Legislature removed the limit on amounts insurance carriers and CompSource could pass on to its policyholders, the justification for providing a rebate was likewise removed. A reading of the statute as interpreted by the majority would allow insurers to pass 100% of assessment costs to policyholders, while still allowing a rebate of two-thirds (2/3) of monies paid to the MITF. Such a handout and absurd result is surely not the outcome intended by our Legislature.

CompSource Mutual Insurance Company v. State of Oklahoma, ex rel. Oklahoma Tax Commission , Okla. Sup. Ct. No. 116,337: CompSource Mutual Insurance Company appealed Tax Commission Order No. 2017-08-01-13, August 1, 2017, issued in Tax Commission Cause No. P-16-159-H.
Oklahoma Association of Electric Self Insurers Fund v. State of Oklahoma, ex rel. Oklahoma Tax Commission , Okla. Sup. Ct. No. 116,341: Oklahoma Association of Electric Self Insurers Fund appealed Tax Commission Order No. 2017-08-01-11, August 1, 2017, issued in Tax Commission Cause No. P-16-092-H.

12 O.S.2011 Ch. 15, App. 1, Okla. Sup. Ct. R. 1.9.

Young v. Station 27, Inc. , 2017 OK 68, ¶ 20, 404 P.3d 829, 839-840, citing Red Rock Mental Health v. Roberts , 1996 OK 117, 940 P.2d 486, 492 and Benning v. Pennwell Pub. Co. , 1994 OK 113, n. 20, 885 P.2d 652, 656.

68 O.S.2011 § 6102 states that rebate assessments shall be paid from the Workers' Compensation Assessment Rebate Fund, and § 6102 also states this Fund shall be funded by taxes levied and collected pursuant to 68 O.S. § 2355, an income tax statute. See § 6102 at note 23 infra .

85 O.S.2001 § 173 (A)(1) ("each mutual or interinsurance association, stock company, CompSource Oklahoma, or other insurance carrier writing workers' compensation insurance in this state shall be assessed and pay to the Oklahoma Tax Commission a sum equal to two per cent (2%) of the total gross direct premiums written for workers' compensation on risks located in this state ... [and] the Oklahoma Tax Commission shall assess and collect from employers carrying their own risk including group self-insurance associations, a temporary assessment at the rate of four percent (4%) of the total compensation for permanent total disability awards, permanent partial disability awards and death benefits paid out....").

85 O.S.2011 § 173(B)(2), (D).

85 O.S.2001 § 173 (H).

68 O.S. 2001 § 2357.44, provided an income tax credit for amounts shown on a premium bill or invoice stating the additional insurance premium paid for the purpose of funds used by the Multiple Injury Trust Fund for payment of claims against the Fund. Section 2357.44 was repealed by 2002 Okla. Sess. Laws, Ch. 31, § 5.

2002 Okla. Sess. Laws, Ch. 31 § 5 (H.B. No. 2752).

2002 Okla. Sess. Laws, Ch. 31, § 2, creating 68 O.S. § 6101, and § 3 of Ch. 31 creating 68 O.S. § 6102.

85 O.S.Supp.2010 § 173 (A)(2).

2011 Okla. Sess. Laws, Ch. 318, § 87 (S.B. No. 878).

Hogg v. Oklahoma County Juvenile Bureau , 2012 OK 107, n. 3 & ¶ 4, 292 P.3d 29, 31.

Section 173(A)(3)(b) of 85 O.S. Supp. 2010 contained a reference to 68 O.S. § 6101 for the 2002 assessment and 85 O.S. 2011 § 403 omitted this reference, but § 403 contained the same restrictions on billing policyholders.

The 2011 version of § 403 had been amended in 2012 to replace the language "Department of Central Services" with "Office of Management and Enterprise Services." 2012 Okla. Sess. Laws, Ch. 304, § 1082.

85 O.S.Supp.2013 § 403. See 2013 Okla. Sess. Laws, Ch. 254, § 1 (stating title of the Act) § 47 (amending § 403 ) (H.B. 2201).

2013 Okla. Sess. Laws, Ch. 208, § 1 (specifying provisions of the Act to be known as the Administrative Workers' Compensation Act), § 171 (repealer provision), § 172 (creating effective date).

The amendment also provided that "if CompSource begins operating as a mutual insurance company" then the Board of Directors of CompSource Mutual Insurance Company shall have the power to disapprove the rate established by the MITF Director until the Multiple Injury Trust Fund repays in full the amount due on any loan from CompSource Mutual Insurance Company or its predecessor CompSource Oklahoma. 85A O.S.Supp.2013 § 31(A)(1) (effective February 1, 2014).

85A O.S.Supp.2013 § 31 ( 2013 Okla. Sess. Laws, Ch. 208, § 31 ) (S.B. No. 1062) (effective Feb. 1, 2014).

85A O.S.Supp.2013 § 31 (A)(3) (effective February 1, 2014).

85A O.S.Supp.2015 § 31 (2015 Okla. Sess. Laws, Ch. 344, § 3) (In 2015, H.B. No. 2238 amended 85A O.S.Supp.2014 § 31 which was identical to § 31 codified at 85A O.S.Supp.2013 § 31.).

68 O.S.2011 § 6101 :
A. All parties required to pay an assessment pursuant to Section 173 of Title 85 of the Oklahoma Statutes shall be entitled to receive a rebate equal to two-thirds (2/3) of the amount of the assessment actually paid, subject to application to and approval of the same by the Oklahoma Tax Commission. This rebate shall only apply to assessments due after January 15, 2002. This rebate shall not be considered in determining tax liability of an insurer pursuant to Section 629 of Title 36 of the Oklahoma Statutes.
B. Beginning January 1, 2003, the Oklahoma Tax Commission shall accept applications for rebates from all eligible parties for assessments paid pertaining to the previous calendar year. If any party fails to apply for a rebate on or before May 31 of each year, the Tax Commission shall reduce the amount of the rebate in the application by ten percent (10%). No rebates shall be paid until after July 1 of each year.
C. The Oklahoma Tax Commission may promulgate rules as necessary to effectuate the provisions of this act.

68 O.S.2011 § 6102 :
There is hereby created within the State Treasury a special fund for the Oklahoma Tax Commission to be designated the Workers' Compensation Assessment Rebate Fund. The Oklahoma Tax Commission is hereby authorized and directed to withhold a portion of the taxes levied and collected pursuant to Section 2355 of Title 68 of the Oklahoma Statutes for deposit into the fund. The amount deposited shall be appropriate to pay the rebates provided for in Section 2 of this act. All of the amounts deposited in such fund shall be used and expended by the Oklahoma Tax Commission solely for the purpose of payment of rebates authorized by Section 2 of this act. The liability of the State of Oklahoma to make the rebate payments under Section 2 of this act shall be limited to the balance contained in the fund created by this section.

36 O.S.Supp.2002 § 1501 : "In determination of the financial condition of an insurer, there shall be allowed as assets only such assets as are owned by the insurer and which consist of: ... (12) Rebates determined and accrued pursuant to Section 2 of this act." The phrase "section 2 of this act" refers to section 2 of Laws 2002, c. 31, § 2, (H.B. No. 2752) where 68 O.S.Supp. § 6101 was created. 2002 Okla. Sess. Laws Ch. 31, §§ 1, 2.

36 O.S. 2011 § 1501 (12).

Allen v. State ex rel. Bd. of Trustees of Oklahoma Uniform Retirement Sys. for Justices & Judges , 1988 OK 99, 769 P.2d 1302, 1306 (rule stated) (If language from section 173 is "on the books" as a specific reference incorporating language into section 6101, as if set forth therein, then repeal of § 173 and removal of the language at issue in section 31 would not change the assessment rebate pursuant to 6101.).

Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 51:8 (7th ed. 2015) (discussing construction of reference statutes).

See the discussion of repeal by implication herein and application of the general rule from Fent v. Henry , 2011 OK 10, 257 P.3d 984.

City of Pond Creek v. Haskell , 1908 OK 153, 21 Okla. 711, 97 P. 338, 357 (Statutes which refer to, and by reference adopt wholly or partially, pre-existing statutes; and the statute referred to is treated as if it were incorporated into and formed part of that which makes the reference.), relying in part on Theodore Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Application of Statutory and Constitutional Law , 229 (1857), Turney v. Wilton , 36 Ill. 385 (1865), and Knapp v. Brooklyn , 97 N.Y. 520 (1884).

Pentagon Academy, Inc. v. Independent School Dist. No. 1 of Tulsa County, 2003 OK 98, ¶ 17, 82 P.3d 587, 591.

State v. Rasmussen , 14 Wash.2d 397, 128 P.2d 318, 320 (1942) ; State v. Waller , 143 Ohio St. 409, 55 N.E.2d 654, 657 (1944) quoting Heirs of Ludlow v. Johnston , 3 Ohio 553, 572, 17 Am. Dec. 609 (1828) ; State v. Armstrong , 31 N.M. 220, 243 P. 333, 353 (1924).

Dabney v. Hooker , 1926 OK 751, 121 Okla. 193, 249 P. 381, 384, quoting Nampa & Meridian Irr. Dist. v. Barker et al. , 38 Idaho 529, 223 P. 529, 530 (1924) (explaining one difference between (1) adoption by reference to particular statute or part of a statute with application of law existing at the time of the adoption and (2) adoption by reference to the law generally when subsequent application of law is based upon the law as it exists at the time the exigency arises to which the law is applied); Ex parte McMahan , 1951 OK CR 146, 94 Okla.Crim. 419, 237 P.2d 462, 466 (In 1923 the Legislature enacted a law [47 O.S. § 93, prohibiting driving under the influence of an intoxicating liquor] which referred to a second statute [47 O.S. § 91, setting forth a definition for highways]; and our Court of Criminal Appeals relied on Dabney v. Hooker , supra , and explained that the former statute was in effect although the latter referenced statute had been repealed.).See also Dir., Office of Workers' Comp. Programs v. Peabody Coal Co. , 554 F.2d 310, 322 (7th Cir. 1977) citing George Williams College v. Village of Williams Bay , 242 Wis. 311, 7 N.W.2d 891 (1943) and 2A Sutherland Statutory Construction , §§ 51.07, 51.08 (4th ed.1973). Cf . Hassett v. Welch , 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858 (1938) (A well-settled canon states that adoption by reference takes the statute as it exists at the time of adoption and does not include subsequent additions.).

El Encanto, Inc., v. Hatch Chile Company, Inc. , 825 F.3d 1161, 1164 (10th Cir. 2016) citing Dir., Office of Workers' Comp. Programs v. Peabody Coal Co. , 554 F.2d 310, 322 (7th Cir. 1977) ; Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 51:8 (7th ed. 2015).

Matter of Commitment of Edward S. , 118 N.J. 118, 570 A.2d 917, 925 (1990) quoting Director, Office of Workers' Compensation v. Peabody Coal Co. , 554 F.2d 310, 324 (7th Cir.1977), (courts have treated a specific reference as a general one); El Encanto, Inc., v. Hatch Chile Company, Inc. , 825 F.3d at 1164 (10th Cir. 2016) citing Dir., Office of Workers' Comp. Programs v. Peabody Coal Co. , 554 F.2d at 322 (well-settled canons of statutory construction distinguish statutes of specific and general reference).

Farmacy LLC v. Kirkpatrick, 2017 OK 37, ¶ 13, 394 P.3d 1256, 1259-1260, citing State ex rel. Dept. of Transportation v. Little, 2004 OK 74, ¶ 10, 100 P.3d 707, 711 and The Pentagon Academy, Inc. v. Independent Sch. Dist. No. 1 of Tulsa County, 2003 OK 98, ¶ 19, 82 P.3d 587, 591.

If the language of the statute is plain and unambiguous, the legislative intent is deemed to be expressed by the statutory language. Torres v. Seaboard Foods , LLC, 2016 OK 20, ¶ 11, n. 8, 373 P.3d 1057, 1065, citing Yocum v. Greenbriar Nursing Home , 2005 OK 27, ¶ 9, 130 P.3d 213, 219.

Brown v. Claims Management Resources, Inc. , 2017 OK 13, ¶ 20, 391 P.3d 111, 118 ; Torres v. Seaboard Foods , LLC, 2016 OK 20, ¶ 11, 373 P.3d 1057, 1065.

YDF, Inc. v. Schlumar, Inc. , 2006 OK 32, ¶ 6, 136 P.3d 656, 658.

S. S. Bowser & Co. v. Garwitz , 185 Mo. App. 420, 170 S.W. 927, 928 (1914) quoting State v. Rogers , 253 Mo. 399, 408, 161 S.W. 770, 772 (1913).

Also addressed herein is the related issue, according to protestants a § 6101 rebate is authorized even with 85 O.S. §§ 173 and 403 repealed and 85A O.S. § 31 amended, and according to the Tax Commission, the rebate is not allowed considering these same statutes.

Dabney v. Hooker , 1926 OK 751, 121 Okla. 193, 249 P. 381, 384. See also Cagiva North America, Inc. v. Schenk , 239 Conn. 1, 680 A.2d 964 (1996) (arguing for an incorporation of a specific referenced statute is a claim that the statute was incorporated as it existed in the year of incorporation regardless of any subsequent amendments to the referenced statute).

See authority cited in note 41 supra .

Shepard v. Oklahoma Department of Corrections , 2015 OK 8, ¶ 15, 345 P.3d 377, 382 (workers' compensation statutes); Samson Hydrocarbons Co. v. Oklahoma Tax Commission , 1998 OK 82, ¶ 15, 976 P.2d 532, 537-538 (tax statutes).

See , e.g. , Samson Hydrocarbons Co. v. Oklahoma Tax Commission , 1998 OK 82, ¶ 15, 976 P.2d 532, 538 (Antecedent legislative enactments may be considered in the construction of amendatory acts in pari materia so that words and phrases employed in the original or antecedent act will be presumed to be used in the same sense in the amendatory enactment.).

See , e.g. , Sudbury v. Deterding , 2001 OK 10, ¶ 16, 19 P.3d 856, 859-860 (in the context of a statute having been amended three times we explained if a statute is reenacted in the same or substantially the same terms after a judicial construction, then the court's meaning of the statute is presumed to have been adopted by the Legislature); Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 22:27 (7th ed. 2015) ("If a statute goes through a revision or is codified without being changed, the legislature is presumed to have adopted the construction which had already existed."); Fourco Glass Co. v. Transmirra Products Corp. , 353 U.S. 222, 227, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957) (moving language to a statute with a different number without any substantive change in the language "cannot be regarded as altering the scope and purpose of the enactment.").
Due to the nature of our analysis herein, we need not explain the several various contexts where legislative numbering, or statutory placement for codification, or some other legislative classification does or does not have a role in judicial construction. See , e.g. , Twin Hills Golf & Country Club, Inc. v. Town of Forest Park , 2005 OK 71, ¶ 12, 123 P.3d 5, 8 (substantive effect of a statute determined the nature or kind of tax enacted and its legislatively-supplied name was not controlling); Harber v. Shaffer , 1988 OK 45, 755 P.2d 640, 642 (the fact that statutes involving contempt were numbered and placed in a particular statutory title was not controlling for the issues before the Court).

The Tax Commission's construction of 85 O.S.2011 § 403 as taking the place of former section 173 for the purpose of the rebate is consistent with language in Fourco Glass Co. v. Transmirra Products Corp. ,supra , at note 45.

State ex rel. State Bd. of Agriculture of Okla. v. Warren , 1958 OK 245, 331 P.2d 405, 408. Cf . Tinker Inv. Mortg. Corp. v. City of Midwest City , 1994 OK 41, 873 P.2d 1029, 1038 (application of rule to judicial construction of municipal ordinances).

Fent v. Henry , 2011 OK 10, ¶ 11, 257 P.3d 984, 991.

For example, a similar analysis was used in National Ass'n of Home Builders v. Defenders of Wildlife , 551 U.S. 644, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007), where Justice Alito in writing for the High Court explained repeals by implication are not favored and the Court would not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all. Id . 551 U.S. at 662-663, 127 S.Ct. 2518, quoting previous opinions of the Court and T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law , 98 (2d ed. 1874).

Anderson v. Eichner , 1994 OK 136, n. 25, 890 P.2d 1329, 1337-1338 (A fundamental proposition is that a statute should not be read in isolation from the context of the entire act of which it forms a part.).

Torres v. Seaboard Foods, LLC , 2016 OK 20, 373 P.3d 1057, 1080, citing State ex rel. Wright v. Oklahoma Corp. Com'n , 2007 OK 73, ¶ 28 & n. 17, 170 P.3d 1024, 1034. Cf . Reichelderfer v. Quinn , 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331 (1932) (per Stone, J., for the Court) (the will of a particular Congress may not be imposed upon a subsequent Congress).

A clarifying amendment is one that explains ambiguous law in order to remove doubt concerning the original legislative intent in the original text. Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n , 1998 OK 113, n. 18, 980 P.2d 109, citing Magnolia Pipe Line Company v. Oklahoma Tax Commission , 1946 OK 113, 196 Okla. 633, 167 P.2d 884, 888.

Movants to Quash Multicounty Grand Jury Subpoena v. Dixon , 2008 OK 36, ¶ 18, 184 P.3d 546 (The Court follows the intent of the framers when construing the Constitution.); Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n , 1988 OK 117, 764 P.2d 172, 179 (The primary goal of statutory construction is to ascertain and follow the intention of the legislature.).

For a few examples of the Insurance Commissioner regulating "insurance rates" and premiums see 36 O.S.Supp.2015 § 902.3 (involving workers' compensation and high-wage-paying and low-wage-paying employers in the same job classification); 36 O.S.2011 § 900.1 -905, 907 -908, 932 (as amended), 1204 (as amended), 3610, and 3611; 36 O.S. 2011 § 901.1 (Oklahoma Insurance Rating Act regulating insurance rates "to the end they shall not be excessive, inadequate or unfairly discriminatory"); 36 O.S.2011 § 902 (Insurance Commissioner "shall not approve rates for insurance which are excessive, inadequate or unfairly discriminatory"); 36 O.S.Supp.2015 § 924.2 (involving self-insureds).

See note 8 supra .

Mustain v. Grand River Dam Authority , 2003 OK 43, ¶ 23, 68 P.3d 991, 999.

Haynes v. Caporal , 1977 OK 166, 571 P.2d 430, ("Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote."), citing Davis v. Childers , 1937 OK 728, 181 Okla. 468, 74 P.2d 930 ; State v. Sandfer , 1951 OK CR 4, 93 Okla.Crim. 228, 226 P.2d 438 (1951), and Barlow v. Jones , 37 Ariz. 396, 294 P. 1106 (1930).

See , e.g. , Branch Trucking Co. v. State ex rel. Oklahoma Tax Comm'n , 1990 OK 41, 801 P.2d 686, 689 (A long-standing administrative interpretation must be given great weight by the courts.). Cf . Davis v. United States , 495 U.S. 472, 484, 110 S.Ct. 2014, 2022, 109 L.Ed.2d 457 (1990) ("... we give an agency's interpretations and practices considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.").

Hall v. Tirey , 1972 OK 118, 501 P.2d 496 (controversy determined by whether Governor's power to remove an official was limited by relevant statutes); Schmitt v. Hunt , 1960 OK 257, 359 P.2d 198 (Governor possessed power to issue executive orders when statute required Governor to take action).

See , e.g. , Holliman v. Cole , 1934 OK 381, 168 Okla. 473, 34 P.2d 597 (Court held the Governor was without authority to remit statutory penalties and interest on delinquent taxes by executive order).

City of Edmond v. Wakefield , 1975 OK 96, 537 P.2d 1211, 1213 ("state statutes which attempt to take away vested property interests ... are unconstitutional as violations of due process."); Shepard v. Oklahoma Dept. of Corrections , 2015 OK 8, ¶ 19, 345 P.3d 377, 384-385 ("It is certainly correct that the Legislature's use of the legislative police power may have the result of altering vested contractual rights.").

Russell Petroleum Co. v. Walker , 1933 OK 75, 162 Okla. 216, 19 P.2d 582, 586-587 (Governor's exercise of the Article 6 § 8 power is subject to the Oklahoma Constitution's Due Process Clause in Art. 2, section 7.).

Redbird v. Oklahoma Tax Commission , 1997 OK 126, ¶ 12, 947 P.2d 525, 528 quoting Reich v. Collins , 513 U.S. 106, 108, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994).

See Franklin v. Margay Oil Corporation , 1944 OK 316, 194 Okla. 519, 153 P.2d 486, 499, where we explained a condition subsequent operates upon an estate already created and opens it to defeat while a condition precedent is a condition which must be performed before an estate can vest. See also Fraley v. Wilkinson , 1920 OK 244, 79 Okla. 21, 191 P. 156, 157.

Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature, 2007 OK 30, ¶ 23, 158 P.3d 1058, 1066 (rule stated in context of explaining Legislature's power pursuant to Okla. Const. Art. 5, section 55 ).

Cf . State v. Lynch , 1990 OK 82, 796 P.2d 1150 (inadequate government funding to pay a lawyer representing an indigent criminal defendant denied the constitutionally guaranteed private property rights of the lawyer appointed to represent the defendant); Sholer v. State ex rel. Oklahoma Dept. of Public Safety , 1995 OK 150, 945 P.2d 469, 475, citing Estate of Kasishke v. Oklahoma Tax Comm'n , 1975 OK 133, 541 P.2d 848, 853 (although a tax refund is typically prosecuted as an administrative action and subject to administrative procedures, the underlying nature of a tax refund request is an action for money had and received where the law provides a remedy for wrongfully retained property).

Okla. Const. art 2, § 7 provides: "No person shall be deprived of life, liberty, or property, without due process of law."
U.S. Const. amend. XIV, § 1 provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

City of Monterey v. Del Monte Dunes at Monterey, Ltd. , 526 U.S. 687, 710, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (Part IV A 1 of the opinion for the Court).

Baby F. v. Okla. County Dist. Court , 2015 OK 24, ¶ 16, 348 P.3d 1080, 1085-1086.

Maxwell v. Sprint PCS , 2016 OK 41, ¶ 22, 369 P.3d 1079, 1091 ("The due process clause of the Oklahoma Constitution protects citizens from arbitrary and unreasonable action by the state.") quoting City of Edmond v. Wakefield , 1975 OK 96, ¶ 6, 537 P.2d 1211, 1213. See also Mustang Run Wind Project, LLC v. Osage County Board of Adjustment , 2016 OK 113, n. 40, 387 P.3d 333 (discussing the arbitrary exercise of government power).

Cf . Crider v. Board of County Com'rs of County of Boulder , 246 F.3d 1285, 1289-1290 (10th Cir. 2001) ("We have noted that the arbitrary and capricious standard [for substantive due process] in the context of zoning 'does not mean simply erroneous.' ") quoting Norton v. Village of Corrales , 103 F.3d 928, 932 (10th Cir.1996).

68 O.S. Supp. 2014 § 225 (E) :
If the appeal is from an order of the Tax Commission or a district court denying a refund of taxes previously paid and if upon final determination of the appeal, the order denying the refund is reversed or modified, the taxes previously paid, together with interest thereon from the date of the filing of the petition in error at the rate provided in subsection A of Section 217 of this title, shall be refunded to the taxpayer by the Tax Commission.

68 O.S. Supp. 2014 § 225(F) :
Such refunds and interest thereon shall be paid by the Tax Commission out of monies in the Tax Commission clearing account from subsequent collections from the same source as the original tax assessment, provided that in the event there are insufficient funds for refunds from subsequent collections from the same source, the refund shall be paid by the Tax Commission from monies appropriated by the Legislature to the special refund reserve account for such purposes as hereinafter provided. There is hereby created within the official depository of the State Treasury an agency special account for the Tax Commission for the purpose of making such refunds as may be required under this section, not otherwise provided. This account shall consist of monies appropriated by the Legislature for the purpose of making refunds under this section.

85 O.S.2011 § 403 (H) : "The refund provisions of Sections 227 through 229 of Title 68 of the Oklahoma Statutes shall be applicable to any payments made to the Multiple Injury Trust Fund. Refunds shall be paid from and out of the Multiple Injury Trust Fund."

85A O.S.Supp.2015 § 31 (H) : "The refund provisions of Sections 227 through 229 of Title 68 of the Oklahoma Statutes shall be applicable to any payments made to the Multiple Injury Trust Fund. Refunds shall be paid from and out of the Multiple Injury Trust Fund." The same language is found in 85A O.S.Supp.2017 § 31(H).

See 68 O.S. § 6102 quoted in note 23 supra .

85A O.S.Supp.2015 § 31(I) states in part: "The Tax Commission shall pay, monthly to the State Treasurer to the credit of the Multiple Injury Fund all monies collected pursuant to the provisions of this section."

Price v. State ex rel. Oklahoma Tax Commission, 1998 OK 99, 968 P.2d 1227.

68 O.S.2011 § 201 :
The purpose of this Article, which may be cited as the "Uniform Tax Procedure Code", is to provide, so far as is possible, uniform procedures and remedies with respect to all state taxes. Unless otherwise expressly provided in any state tax law, heretofore or hereafter enacted, the provisions of this article shall control and shall be exclusive.

Multiple Injury Trust Fund v. Coburn , 2016 OK 120, ¶ 23, 386 P.3d 628, 636 ("In summary, when there is a conflict between two statutes, one specific [or special] and one general, the statute enacted for the purpose of dealing with the subject matter controls over the general statute.").

In re O'Carroll , 1998 OK 6, ¶¶ 6-7, 952 P.2d 45, 48-49 (Court agreed with party that 68 O.S.1991 § 2375(H) created a narrow exception to application of 68 O.S.1991 § 223, a provision of the Uniform Tax Procedure Code).

In 2011, the Legislature enacted 85 O.S. § 403 with essentially the same language. Section 403 was later repealed in 2013. The new Administrative Workers' Compensation Act (85A O.S. §§ 1 -401.1 ), enacted in 2013, contained a similar provision in 85A O.S. § 31. Section 31 was amended in 2015, eliminating the restriction on pass through of MITF assessments to policyholders. The rebate provision in 68 O.S. § 6101 referring to 85 O.S. § 173 was never amended. The fact that the OTC followed the trail and continued to pay rebates until 2015, does not change the fact that once 85 O.S. § 173 was repealed, OTC no longer had authority to issue rebates pursuant to 68 O.S. § 6101.

Prior to 2002, insurers and CompSource could pass on one-hundred percent (100%) of the MITF assessments to policyholders. After the enactment of the rebate program, policy holders benefitted by no longer shouldering the entire amount of MITF assessment, while insurers continued to be made whole for the actual out-of-pocket expenses incurred as a result of the MITF assessments.